THE STATE OF NEBRASKA, EX REL. JOSEPH R. WEBSTER, v. THE NEBRASKA TELEPHONE COMPANY.

1. **Telephone Companies:** DISCRIMINATION NOT ALLOWED. When a corporation or person assumes and undertakes to supply a public demand, made necessary by the demands of the commerce of the country, such as a public telephone, such demand must be supplied to all alike without discrimination.

2. ——: ——: TELEPHONE COMPANY IS PUBLIC SERVANT. Respondent is the owner of and is conducting a system of public telephone exchanges in Nebraska and Iowa, including in its circuit about fifteen hundred telephone instruments, supplied by it to that number of subscribers, upon the terms fixed by itself. Relator applied to be admitted as a subscriber and was refused. He tendered a full compliance with all the rules of the company. His place of business was accessible, no reason being shown why his request should not be granted. *Held,* That the telephone is a public servant in the commerce of the country, and that respondent having undertaken to supply the demand must supply all alike without discrimination, and that having undertaken to supply the demand in the city of L., wherein relator resides, and being fully able to furnish him with a telephone instrument the same as its other subscribers, it was its duty to do so.

3. ——: MANDAMUS LIES TO COMPEL FURNISHING OF INSTRUMENTS. Telephone companies being common carriers of news, all persons are entitled to equal facilities in the enjoyment of the benefits to be derived from the use of the telephone, and where no good reason is assigned for a refusal by a telephone company to furnish a telephone instrument to a person who desires to become a subscriber, and tenders a full compliance with all the rules established for other subscribers, a writ of mandamus will issue to compel such company to furnish such person with the necessary instruments.

ORIGINAL application for mandamus.

*J. R. Webster, pro se.*

1.  Mandamus is the proper remedy.
*People v. Throop,* 12 Wend., 183.   *People v. Gas Co.,*

45 Barb., 136. *Hobersham v. Canal Co.*, 26 Ga., 665. *People v. Troy R. R. Co.*, 37 How. Pr., 427. *Indianapolis v. R. R. Co.*, 37 Ind., 489. *Bartlett v. Medical Society*, 32 N. Y., 187. *Roehlen v. Aid Society*, 22 Mich., 86. *People v. Steele*, 2 Barb., 397. *Runkel v. Winemiller*, 4 Har. & J., 429. *U. P. R. R. Co. v. Hall*, 91 U. S., 343, 355, and many cases cited. *M. & O. R. R. Co. v. Wisdom*, 5 Hisk., 125. *Chicago R. R. Co. v. People*, 56 Ill., 366. The defendant is engaged in a public business. The business of telegraphing is a business of public employment of so high character that it is recognized as an *arm of commerce*, and as such coming within the regulating power of congress under the provisions of the federal constitution vesting congress with powers "to regulate commerce with foreign nations, and among the several states," and "to establish post-offices and post-roads." *Pensa. Tel. Co. v. W. U. Tel. Co.*, 96 U. S., 1. *Breese v. U. S. Tel. Co.*, 48 N. Y., 132. *W. U. Tel. Co. v. Ferguson*, 57 Ind., 495. *Bartlet v. Tel. Co.*, 62 Me., 209. *Candee v. Tel. Co.*, 34 Wis., 471. Const. Neb., Art. XI., Sec. 3.

2. The telephone is a telegraph.

"The telegraph is a machine for communicating intelli-"gence from a distance by various signals or movements "previously agreed upon. The *Electro Magnetic Tele-*"*graph* is an instrument or apparatus for communicating "*words or language* to a distance by the use of electricity. "Web. Dic. *Telegraph.*

"Electro magnetic telegraph, an instrument or appa-"ratus, which by means of wires conducting the electric "fluid conveys intelligence to any given distance with the "velocity of lightning." S. F. B. Morse, Web. Dic., *Electro Magnetic Telegraph.*

No more apt words than these in use in 1856, long before the invention of speaking telephones, could be now devised as a definition of the speaking telephone. They exactly and accurately describe the principle of action of

all electro magnetic instruments for conveyance of intelligence, and include *necessarily* every mechanical form of apparatus in which the *agent* electricity is used by the *means* of conducting metallic wire and apparatus, to accomplish the *object* of communicating words or language to a distance with the speed of lightning. To say these definitions were the perfect work of perfect *masters of language* would not be justice. They were *prophesy*. The foretelling of the possibilities and future development of telegraphy. The mechanical forms of the receiving and transmitting instruments may be varied ever so much. It may be a Morse instrument, a Vail printing instrument, an Edison quadruplex instrument, or a Bell or Edison speaking telephone. These are but different mechanical devices and forms to effect by one common agency and one common means, one common object. Generically they are the same. Specifically they differ, and the telephone is simply a specific or specialized form of telegraph. *Attorney General v. Edison Telephone Company*, 6 Law Rep., Queen's Bench Div., 244.

3.   Common carriers of all kinds, and other public servants must exercise their several businesses with impartiality. *Chicago R. R. v. People*, 56 Ill., 365. Telegraph company must serve public indiscriminately. *W. U. Tel. Co. v. Furgeson*, 57 Ind., 495. *Chic. R. R. Co. v. People*, 26 Ill., 365. *State v. Telephone Co.*, 36 Ohio St., 296, 309. Nor can a state grant a monopoly in telegraphy for transmission of intelligence from place to place. *Pensacola Tel. Co. v. W. U. Tel. Co.*, 96 U. S., 1, 11. The duty to grant indiscriminate and impartial facilities to all citizens for transmission of intelligence is clearly the duty of telephone companies, as other telegraph companies, not merely by statute, but by principles of public policy. *State v. Telephone Co.*, 36 Ohio St., 296, 309.

4.   Defendant contends, that the telephone system being its private property, it, like any owner of private property

may use, or refuse to use; grant the use, or refuse the grant, as he will, and it may refuse. The principle is correct, the error in the conclusion lies in the premise. *Aldrutt v. Inglis*, 12 East, 527. See also *Munn v. Illinois*, 94 U. S., 113. *Sickles v. Gas Co.*, 64 How. Pr., 33.

*Thurston & Hall*, for respondent.

Upon the facts and law in this case the defendant makes the following points:

(1.) The facts do not show a right in the plaintiff to have a telephone, even conceding his view of the law to be true.

(2.) Assuming it to be true that he has a right to have a telephone placed in his office by this defendant, still mandamus is not the proper remedy.

This company, defendant, under the proofs, is doing business with the general public by means of its public telephone at places conveniently situated. With certain individuals it also has special contracts for a term of not less than one year, payable monthly. The contract is in proof. The testimony as to such contracts shows that the ability of the company to make such special contracts is dependent upon many facts, which are incapable of arbitrary determination—the nature of electricity, the responsibility of the contracting party, the position of the applicant with reference to the wires already strung, etc., etc. Upon these facts we insist that were the defendant a public corporation subject to all the duties the possession of special privileges bring, and had we a statute enforcing upon it the duty to equally serve all parties, yet the court would hesitate long before establishing by mandamus a rule that, if carried out, must ruin any company subjected to it. Such duty is amply fulfilled when the company has placed for the public telephones for general use, to which any one may resort, and amply sufficient to accommodate

9

the public.   The telephone company is not a public corporation.   It has granted to it no special power or privilege.   Under no right received from state does it have any special franchise.   From no service has it any benefit conferred upon it that no other may enjoy, which renders it subject to any special law.   And under no special law has any such duty been imposed upon it.

Surely as far as courts have gone in this matter they *will not* say that the regulation of business of a private corporation with a private individual by contract which is special to themselves, can without legislation be compelled by the courts.   It requires some law making this duty to make this private contract for a year, else the right does not exist.   If such a law were made by statute under the extreme rule of law carried to its utmost limit, marked by able dissenting opinions of eminent judges, that law would be unconstitutional.   Here, without statute, they demand it.   Is this all?   What are the facts?   They show that the defendant did give the plaintiff a telephone, did contract with him, did fulfill his contract, that disputes arose and plaintiff would not pay his rates, and that he notified the defendant that if they were not satisfied they could remove the telephone, and that thereupon they removed it, and that the plaintiff still owes the rates and is indebted for it, and now defies collection.   Upon any principle of justice had there been a hundred rights to have the telephone, there is none now.   Upon this question taken in the best light for the plaintiff, a disputed one, he demands of this court's hands a summary writ, which takes away the right of trial by jury, which is only to be granted when the right is clear and undisputed, and only when the duty is one specially enjoined by law and arising from an office, trust, or station.   Upon this case under our statute the writ of mandamus will not lie.   1 Neb., 127.   7 Neb., 134.   14 Neb., 267.   14 Neb., 509.   No statute provides and especially enjoins this duty.   Hence the writ must be de-

nied.  20 Kas., 404.  22 Ohio, 475.  17 Ohio St., 103.  8 Kas., 458.  5 Kas., 468.  47 Mich., 426.  17 Minn., 202. 9 Brush, Ky., 544.  16 O. S., 308.  54 Iowa, 438.

REESE, J.

This is an original application for a mandamus to compel the respondent to place and maintain in the office of the relator a telephone and transmitter, such as are usually furnished to the subscribers of the respondent.  The respondent has refused to furnish the instruments, and presents several excuses and reasons for its refusal, some of which we will briefly notice.

It appears that during the year 1883 the respondent placed an instrument in the office of the relator, but for some reason failed to furnish the relator with a directory or list of its subscribers in Lincoln and various other cities and villages within its circuit, and which directory the relator claimed was essential to the profitable use of the telephone, and which it was the custom of respondent to furnish to its subscribers.  Finally, the directory was furnished, but upon pay-day the relator refused to pay for the use of the telephone during the time the respondent was in default with the directory.  Neither party being willing to yield, the instruments were removed.  Soon afterwards the relator applied to the agent of the respondent and requested to become a subscriber and to have an instrument placed in his place of business, which the respondent refused to do.  It is insisted that the conduct of the relator now relieves respondent from any obligation to furnish the telephone even if such obligation would otherwise exist.

We can not see that the relations of the parties to each other can have any influence upon their rights and obligations in this action.  If relator is indebted to respondent for the use of its telephone the law gives it an adequate remedy by an action for the amount due.  If the telephone

has become such a public servant as to be subject to the process of the courts in compelling it to discharge public duties, the mere fact of a misunderstanding with those who desire to receive its public benefits, will not alone relieve it from the discharge of those duties.   While either, or perhaps both, of the parties may have been in the wrong so far as the past is concerned, we fail to perceive how it can affect the rights of the parties to this action.

The pleadings and proofs show that the relator is an attorney-at-law in Lincoln, Nebraska.   That he is somewhat extensively engaged in the business of his profession, which extends to Lincoln and Omaha, and surrounding cities and county seats, including quite a number of the principal towns in south-eastern Nebraska.   That this territory is occupied by respondent exclusively, together with a large portion of south-western Iowa, including in all about fifteen hundred different instruments.

By the testimony of one of the principal witnesses for respondent we learn that the company is incorporated for the purpose of furnishing individual subscribers telephone connection with each other under the patents owned by the American Telephone Company; instruments to be furnished by said company and sublet by the Nebraska Telephone Company to the subscribers to it.   This is clearly the purpose of the organization.   While it is true, as claimed by respondent, that it has been organized under the general corporation laws of the state, and in some matters has no higher or greater right than an ordinary corporation, yet it is also true that it has assumed to act in a capacity which is to a great extent public, and has, in the large territory covered by it, undertaken to satisfy a public want or necessity.   This public demand can only be supplied by complying with the necessity which has sprung into existence by the introduction of the instrument known as the telephone, and which new demand or necessity in commerce the respondent proposes satisfying.   It is also

true that the respondent is not possessed of any special privileges under the statutes of the state, and that it is not under quite so heavy obligations, legally, to the public as it would be, had it been favored in that way, but we fail to see just how that fact relieves it. While there is no law giving it a monopoly of the business in the territory covered by its wires, yet it must be apparent to all that the mere fact of this territory being covered by the " plant " of respondent, from the very nature and character of its business gives it a monopoly of the business which it transacts. No two companies will try to cover this same territory. The demands of the commerce of the present day makes the telephone a necessity. All the people upon complying with the reasonable rules and demands of the owners of the commodity—patented as it is—should have the benefits of this new commerce. The wires of respondent pass the office of the relator. Its posts are planted in the street in front of his door. In the very nature of things no other wires or posts will be placed there while those of respondent remain. The relator never can be supplied with this new element of commerce so necessary in the prosecution of all kinds of business, unless supplied by the respondent. He has tendered to it all the money required by it from its other subscribers in Lincoln for putting in an instrument. He has proven, and it is conceded by respondent, that he is able, financially, to meet all the payments which may become due in the future. It is shown that his office can be supplied with less expense and trouble to respondent than many others which are furnished by it. No reason can be assigned why respondent should not furnish the required instruments, except that it does not want to. There could, and doubtless does, exist in many cases sufficient reason for failing to comply with such a demand, but they are not shown to exist in this case. It is shown to be essential to the business interests of relator that his office be furnished with a telephone.

The value of such property is, of course, conceded by respondent, but by its attitude it says it will destroy those interests and give to some one in the same business, who may have been more friendly, this advantage over him.

It is said by respondent that it has public telephone stations in Lincoln, some of which are near relator's office, and that he is entitled to and may use such telephone to its full extent by coming there.  That, like the telegraph, it is bound to send the messages of relator, but it can as well do it from these public stations, that it is willing to do so, and that is all that can be required of it.   Were it true that respondent had not undertaken to supply a public demand beyond that undertaken by the telegraph, then its obligations would extend no further.  But as the telegraph has undertaken to the public to send dispatches from its offices, so the telephone has undertaken with the public to send messages from its instruments, one of which it proposes to supply to each person or interest requiring it, if conditions are reasonably favorable.  This is the basis upon which it proposes to operate the demand which it proposes to supply.   It has so assumed and undertaken to the public.

That the telephone, by the necessities of commerce and public use, has become a public servant, a factor in the commerce of the nation and of a great portion of the civilized world, cannot be questioned.   It is to all intents and purposes a part of the telegraphic system of the country, and in so far as it has been introduced for public use and has been undertaken by the respondent, so far should the respondent be held to the same obligation as the telegraph and other public servants.   It has assumed the responsibilities of a common carrier of news.   Its wires and poles line our public streets and thoroughfares.  It has, and must be held to have taken its place by the side of the telegraph as such common carrier.

The views herein expressed are not new.  Similar ques-

tions have arisen in, and have been frequently discussed and decided by, the courts, and no statute has been deemed necessary to aid the courts in holding that when a person or company undertakes to supply a demand which is "affected with a public interest," it must supply all alike who are like situated, and not discriminate in favor of, nor against any. [This reasoning is not met by saying that the rules laid down by the courts as applicable to railroads, express companies, telegraphs, and other older servants of the public, do not apply to telephones, for the reason that they are of recent invention and were not thought of at the time the decisions were made, and hence are not affected by them, and can only be reached by legislation. The principles established and declared by the courts, and which were and are demanded by the highest material interests of the country, are not confined to the instrumentalities of commerce nor to the particular kinds of service known or in use at the time when those principles were enunciated, "but they keep pace with the progress of the country and adapt themselves to the new developments of time and circumstances. They extend from the horse with its rider to the stage coach, from the sailing vessel to the steamboat, from the coach and the steamboat to the railroad, and from the railroad to the telegraph," and from the telegraph to the telephone; "as these new agencies are successively brought into use to meet the demands of increasing population and wealth. They were intended for the government of the business to which they relate, at all times and under all circumstances."] *Pensacola Tel. Co. v. W. U. Tel. Co.,* 96 U. S., 9.

In *The State, ex rel., v. The Bell Telephone Company and others,* 36 Ohio State, 296, a writ of mandamus was granted by the supreme court of Ohio to compel the telephone company to place one of its telephone instruments in the place of business of the relator, and to give it equal facilities with other telegraph companies. This decision was

based upon the statute of that state, which provided that telegraph companies should receive dispatches from and for other telegraph company's lines, and from and for individuals, and transmit them with impartiality and good faith, under a penalty of one hundred dollars, and that the provisions of the act should apply also to telephone companies. So far as the obligations of the telegraph companies are defined by the act (except the payment of the penalty) they are simply declarative of the common law. These obligations are imposed by the demands of commerce and trade, and it would be idle to say they existed only by force of the statute, and the same is true of the clause in the act making its provisions applicable to telephones. See authorities cited in the brief of relator in that case. But the court declined to discuss that question, as the question between the parties could be determined by reference to the statute.

In *Allnutt v. Inglis*, 12 East, 527, the court of King's Bench in England, in 1810, held that, "where private property is, by the consent of the owner, invested with a public interest or privilege for the benefit of the public, the owner can no longer deal with it as private property only, but must hold it subject to the rights of the public, in the exercise of that public interest conferred for their benefit."

In *Vincent v. The Chicago & Alton R. R. Co.*, 49 Ills., 33, the supreme court of Illinois held that it was the duty of a railroad company to make a personal delivery of consigned property to the consignee, in cases where such delivery was practicable, and that this duty existed independent of the statute, and it was within the power of the court to enforce the observance of such duty. See also *The People, ex rel., v. The Manhattan Gas Light Co.*, 45 Barb., 361. *Chi. & N. W. R. R. Co. v. The People*, 56 Ills., 365. *Munn v. Illinois*, 94 U. S. Rep., 13.

It is insisted by the respondent that mandamus is not the proper remedy in this case; that if the obligations con-

tended for by the relator do exist, they are not enforceable by mandamus. To this we cannot agree. To our mind, it is the duty of respondent to furnish the transmitter and telephone to relator as it does to its other subscribers, without discrimination. That this duty arises from the trust or station assumed by respondent, and that relator has no adequate remedy at law. The duty is of the same nature as the duties of common carriers. Respondent is a common carrier of news, the same as a telegraph company. The duty of common carriers is one of law growing out of their office, and not of contract. Redfield on Carriers, 30, § 40. *Western Transportation v. Newhall*, 24 Ills., 466. The remedy by mandamus is the appropriate one. The duty is of a public character, and there is no other adequate mode of relief. *Vincent v. Chi. & Alton R. R. Co.*, *supra*. *State v. Hartford & N. H. R. R. Co.*, 29 Conn., 538. *People v. Albany & Vt. R. R.*, 24 N. Y., 261. 2 Shelf on Railways, 864. Moses on Mandamus, 155, 168, 171, 176. 2 Redfield on Rys., 257, 275, 294. *Chi. & N. W. Ry. Co. v. The People*, 56 Ills., 365. *The State, ex rel., v. The Bell Telephone Co.*, *supra*.

A peremptory writ of mandamus must be awarded.

WRIT ALLOWED.