RUSHVILLE COÖPERATIVE TELEPHONE COMPANY v.
IRVIN.

[No. 3,266.    Filed Jan. 22, 1901.    Rehearing denied June 4, 1901.]

TELEPHONE COMPANIES.—*Discrimination.*—*Penalty.*—To a complaint under §5529 Burns 1894 for penalty for denial of telephone service to plaintiff, the company answered setting up a rule of the company requiring all moneys due it to be paid at the office of the secretary on the fifth day of the month succeeding the maturity of such indebtedness, and that on failure to pay such indebtedness telephone service was to be discontinued until the indebtedness was paid; that plaintiff failed and refused to pay an indebtedness due defendant by plaintiff after the same was due and demand therefor. To this answer plaintiff replied that at the time of the disconnection of plaintiff's telephone there were thirty-five or more of the patrons of defendant in arrears for telephone service, and that plaintiff was the only person refused service on that account. *Held*, that the reply fails to show that the other delinquent patrons were in like situation with plaintiff, since the reply does not allege that they refused to pay when pay was demanded of them as the answer alleges of plaintiff. *pp. 62-66.*

SAME.—*Non-Payment of Dues for Service.*—*Disconnection of Telephone.*—A telephone company has the right to discontinue telephone service to a patron for non-payment of telephone dues for the preceding month, notwithstanding the patron claims the company is indebted to him. *pp. 68, 69.*

From Rush Circuit Court; *L. J. Kirkpatrick*, Special Judge.

Action by Arthur B. Irvin against the Rushville Coöperative Telephone Company to recover statutory penalty for refusal to furnish service. From a judgment in favor of plaintiff, defendant appeals. *Reversed.*

*B. L. Smith, C. Cambern* and *D. L. Smith,* for appellant.
*S. L. Innis, W. G. Morgan, H. E. Barrett, D. W. McKee, A. B. Irvin, R. Conner* and *L. Conner,* for appellee.

ROBINSON, J.—On July 18, 1898, appellee sued to recover a statutory penalty, averring that he is a stockholder in the company; that on July 13, 1898, appellant wrong-

Rushville Coöperative Tel. Co. *v.* Irvin.

fully disconnected his telephone line from its switchboard, and refused to furnish him telephone service, although he had fully complied with all the reasonable rules and regulations of the company. On July 27, 1898, he filed another complaint in nine paragraphs, in each of which he asks the statutory penalty because of the company's refusal to furnish telephone service upon demand, the demand and refusal in the several paragraphs having been made July 20, 1898, July 21, 1898, at 9 o'clock a. m., July 21, 1898, at 10 o'clock a. m., July 22, 1898, July 23, 1898, July 25, 1898, July 26, 1898, at 8:40 a. m., July 26, 1898, at 10 o'clock a. m., and July 27, 1898. By agreement the causes were consolidated. Appellant answered in four paragraphs, the first of which is the general denial.

The second paragraph of answer alleges that appellee had telephone connection until July 13, 1898, at which time appellant cut off communication with appellee's telephone, and that the same remained cut off continuously until July 28, 1898; that the several causes of action are all for one disconnection, and that as to all the paragraphs except one, there is a multiplicity of suits. A demurrer to this paragraph was sustained.

The action is based upon §§2 and 3 of the act of April 8, 1885, being §§5529, 5512 Burns 1894, which read as follows: §5529. "Every telephone company with wires wholly or partly within this State, and engaged in a general telephone business, shall within the local limits of such telephone companies' business supply all applicants for telephone connections and facilities with such connections and facilities without discrimination or partiality, provided such applicants comply or offer to comply with the reasonable regulations of the company; and no such company shall impose any conditions or restrictions upon any such applicant that are not imposed impartially upon all persons or companies in like situation, nor shall such companies discriminate against any individual or company engaged in any law-

ful business, or between individuals or companies engaged in the same business, by requiring as a condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, for any lawful purpose." §5512: "Any person or company violating any of the provisions of this act shall be liable to any party aggrieved in a penalty of $100 for each offense, to be recovered in a civil action in any court of competent jurisdiction: Provided, nothing in this act shall be construed to take away or abridge the right of such aggrieved party to appeal to a court of equity to prevent such violations or discriminations by injunction or otherwise." The statute says the company shall be liable in a penalty of $100 for *each offense*.

In *Central Union Tel. Co.* v. *Fehring,* 146 Ind. 189, it was held that it is not only the duty of the company to furnish the applicant an instrument properly connected with its exchange, but that it must also supply all connections and facilities necessary to the use of the instrument. In the case at bar each paragraph avers a separate and distinct refusal to furnish appellee telephonic service. It is of the refusal to furnish the service upon demand and not so much the act of the disconnection that complaint is made. The statute gives a penalty for the refusal to supply connections and facilities necessary to the use of the instrument, and upon this refusal this action is based. As is said in *Central Union Tel. Co.* v. *Fehring, supra,* "After the telephone instrument was furnished appellee and connected with the exchange, it was the duty of appellant each time when requested by appellee to make such connection as would enable him to converse with the person named, without discrimination or partiality, and for a refusal so to do appellant became liable to appellee as provided in said act." From this holding it does not necessarily follow that appellee could have made a demand every minute in the day and maintain an action for each refusal. There is nothing to show that the demands for service in this case were not made in good faith. It is unnecessary to say

what the rule would be if it appeared the demands for service were not so made.

The third paragraph of answer pleads a rule of the company that all moneys due it or its toll line connections are payable at the office of the secretary on or before the 5th day of the month succeeding the maturity of such indebtedness, and if not paid on or before that date the service of the delinquent shall be discontinued until the indebtedness is paid; that appellee was indebted to the company eighty cents for the dues of the month of June, which he failed and refused to pay, although payment was demanded at appellee's place of business prior to the 13th day of July, the date of the disconnection.

The seventh paragraph of reply to the third answer alleges that the rule had not been repealed in express terms, but that on July 5th appellant had 150 patrons, all as to service in like situation as appellee, and sixty of whom were in arrears for service for June; that on July 13th more than thirty-five of these patrons were still in arrears as was appellee and had not paid what they owed appellant at the office of its secretary or elsewhere, and, notwithstanding these facts, appellee was and is the only person refused service; that from the 13th to the 27th day of July appellant continued to and did furnish such persons other than appellee who were so in arrears service whenever called upon; that appellee was and is the owner of personal property subject to execution of the value of $3,000.  Overruling a demurrer to this reply is assigned as error.

The rule pleaded in the third paragraph of answer is a reasonable rule and one which the company had the right to enforce. *Western Union Tel. Co.* v. *McGuire,* 104 Ind. 130, and cases cited, 54 Am. Rep. 296; *Watauga Water Co.* v. *Wolfe,* 99 Tenn. 429, 41 S. W. 1060; *Frothingham* v. *Bensen,* 44 N. Y. Supp. 879; *Brass* v. *Rathbone,* 153 N. Y.435, 47 N. E. 905.  Such a rule may be enforced for the reason

that such a company is charged with a public duty and may enforce such reasonable rules as are necessary to enable it to give the public efficient service. It is a quasi-public corporation and must extend its service to those who apply and who offer to pay the charges. It may be compelled by mandate to render its services, and prevented by injunction from discontinuing such service. It can not render efficient service to the public unless it can enforce prompt payment of tolls, and this fact is recognized by the courts when they hold that for non-compliance with a reasonable rule service may be refused. The company had the right to refuse the service demanded as long as the subscriber refused to pay the bill for the preceding month. The third paragraph of answer was a complete bar to appellee's cause of action.

The reply admits the rule and undertakes to plead that it was not in force by showing that certain other patrons had not paid their tolls, and were in arrears when service was denied appellant, although service was continued to such other patrons. But the reply fails to show that these delinquent patrons were in a like situation with appellee. They may have been in arrears for the preceding month, but this is not equivalent to saying that they had refused to pay when payment was demanded, as is alleged in the answer as to appellee. The reply does not show that service was furnished other patrons under the conditions which the answer alleges service was denied appellee. If it should be held that the conditions were the same, then the reply must be held to be a departure, because the complaint seeks the penalty for failure to furnish service, and the reply would be upon the theory that appellant is liable under the statute because of discrimination. But it can not be held that the conditions were the same. Failing to pay a debt when due, and refusing to pay it when due and when demanded, do not mean the same thing. Appellee's reply does not place him in the same situation as the other patrons. The demurrer to this reply should have been sustained.

Rushville Coöperative Tel. Co. v. Irvin.

It was admitted upon the trial that on July 13, 1898, there was unsettled and standing against appellee the claim for the preceding month eighty cents as dues for telephone rent and also twenty-five cents for a message; that before the connection was cut off appellant's collector called upon appellee at his place of business and presented a bill for the above amount, and appellee declined to pay the same, on the ground that the company was indebted to him, and that appellee had not paid appellant in money the dues and toll for the preceding month; that upon appellee refusing to pay such dues and toll, for the reasons stated by appellee, thereupon appellant disconnected appellee's instrument for such failure and refusal to pay such dues, and not for failing to fill any other requirements or regulation of appellant. It is seen by the admission that appellee did not refuse to pay the bill because he did not owe for services for June, but that he claimed the company was owing him. No question is made that efficient and satisfactory service was not rendered, nor that the company failed in any way in its duty in that regard. The question is thus presented whether the company had the right to discontinue the service because of the refusal to pay the preceding month's rental, regardless of the fact that the subscriber claimed the company was indebted to him.

Counsel for appellee cite the cases of *Webster* v. *Nebraska Tel. Co.,* 17 Neb. 126, 22 N. W. 237, and *Wood* v. *City of Auburn,* 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376. In the Nebraska case the company had furnished a telephone but had failed to furnish a directory, or list of subscribers, which it was claimed was essential, and which it was the custom of the company to furnish subscribers. Upon payday payment was refused for the time the directory was not furnished, and, failing to agree, the instrument was removed. Soon afterwards the old subscriber applied for an instrument, which the company refused. A writ of mandate was awarded him. In the Maine case a water company

prior to November 1, 1892, had furnished appellant water, and had been paid the regular rates six months in advance on May 1st and November 1st each year, according to the company's regulation; November 1, 1892, the rates were not paid or tendered for the ensuing six months, he claiming the company was not fulfilling its duty. The water was not shut off but was supplied during the six months ending May 1, 1893. In that month the company transferred its system and all bills against water takers to appellee. Immediately after the transfer, and in May, appellant tendered the rates for the six months ending November 1, 1893, which appellant accepted, and supplied the water for that period. In November, 1893, appellant tendered the rates for the then next ensuing six months, which the city refused to receive, and informed him the water would be shut off if he did not pay the old bill for the six months between November 1, 1892, and May 1, 1893; he then filed a bill to restrain the city from shutting off the water. The injunction was granted and made permanent. It was held in that case that when the city had taken his money for one six months' pay, according to its rules, it waived any right to use the summary remedy of shutting off water to collect a disputed bill, and thereby elected to continue him as a water taker, and resort to the usual legal remedies for settling the prior dispute. The case holds that the company could have insisted on payment of the bill in advance, and could have shut off the water during the time covered by the bill, but did not. And in the Nebraska case, between the time demand was made for service and the time when the former bill was incurred there had been for a time an entire discontinuance of any telephone service apparently by agreement of parties. In the case at bar no attempt was made to enforce the collection of an old bill in the sense in which it was attempted in the cases above cited.

It can not be denied that a rule of the company requiring these monthly payments to be made in advance would have

been a reasonable rule, and that upon refusal so to pay service could be denied. The company must protect its plant and keep up its efficiency, and may enforce a rule that insures a reasonable revenue and its prompt receipt. It can maintain an efficient service only through prompt payment of its dues and tolls, and because of that fact it may use the summary remedy of denying service for non-payment. It can not be said it may be denied the benefit of this rule because a patron claims the company is indebted to him. It can not be required to stop and adjudicate claims held against it. The law compels it to furnish service, a patron may take service or not as he chooses. It must furnish efficient service to all alike who are alike situated, and must not discriminate in favor of or against any one. The law holds the company to these requirements strictly. For failure, the extraordinary remedies of mandamus and injunction may be successfully invoked. It may be said the courts are open to the company to collect its claim, but as to this the company and the patron are on an equal footing. The fact that the patron is solvent aids nothing in determining a rule which must apply to solvent and insolvent patrons alike. Keeping in view the nature of the company's duties, and the services it may be compelled to render, it must be held that the company may enforce the payment of its current dues and tolls by the summary remedy of denying service regardless of the fact that the subscriber claims the company is indebted to him.

Judgment reversed, with instructions to sustain the demurrer to the seventh paragraph of reply.

Henley, C. J., absent.