WAUKESHA GAS & ELECTRIC COMPANY, Respondent, vs. WAUKESHA MOTOR COMPANY, Appellant.

*September 23—December 13, 1921.*

*Public utilities: Jurisdiction of railroad commission: Failure of utility to perform contract.*

Secs. 1797—37m and 1797—12a, Stats. (the railroad commission law), relating to jurisdiction of the railroad commission over questions of overcharges or inadequate service, do not deprive the courts of jurisdiction to hear an action or counterclaim based on the failure of a public utility to perform its contract duty, such as the failure of a gas and electric company to perform its contract to furnish a certain quantity of gas and

electricity. The jurisdiction of the commission is confined to prescribing rates and regulations for the future, and it has no jurisdiction to redress wrongs or grievances arising from past conduct of the utility.

APPEAL from an order of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

The plaintiff is a public utility furnishing gas and electric service in the city of Waukesha. The defendant is the proprietor of a manufacturing plant located in that city. In an action brought by the plaintiff against the defendant, the defendant interposed a counterclaim in which it was alleged, in effect, that the plaintiff had entered into a contract by which it undertook and agreed to furnish the defendant with all of the electric energy necessary to properly operate its plant, and with two million cubic feet of gas per month; that by reason of this contract it equipped its plant with electric motors and with proper appliances; that plaintiff breached said contract by failing to furnish electrical energy in sufficient quantity to enable defendant to properly prosecute its manufacturing business, and that it failed to furnish it with the two million cubic feet of gas per month, which resulted in embarrassment and delay in the prosecution of its manufacturing business, all to its damage in the sum of $150,000.

A demurrer to the counterclaim was interposed, upon the ground that the court had no jurisdiction of the cause of action, and on the further ground that no facts were stated to constitute a cause of action. The court made an order sustaining the general demurrer, generally. While the order did not state the grounds upon which the demurrer was sustained, an opinion filed by the trial judge indicates that it was sustained because the court had no jurisdiction. This appeal is from the order sustaining the demurrer.

For the appellant there was a brief by *Frame & Blackstone* of Waukesha, and oral argument by *H. J. Frame.*

For the respondent there was a brief by *Jacobson & Malone* of Waukesha, and oral argument by *M. A. Jacobson.*

The following opinion was filed October 18, 1921:

OWEN, J.    The counterclaim sets forth a cause of action for a plain breach of contract. That it sets forth facts sufficient to constitute a cause of action is not seriously challenged here. A demurrer thereto was sustained on the ground that the court had no jurisdiction of the cause of action. The trial court was of the opinion that the railroad commission had exclusive jurisdiction to deal with the subject. Respondent seeks to maintain that position by reason of the analogy between our public utility act and the interstate commerce act, under the express terms of which, as construed by the federal court, exclusive jurisdiction is vested in the interstate commerce commission to deal with certain controversies arising between shippers and carriers. But it must be remembered that this exclusive jurisdiction springs from the express provisions of the interstate commerce act and that it does not extend to controversies of every nature, kind, and description arising between the shipper and the carrier. It is confined and limited to the determination of matters calling for the exercise of the administrative power and discretion of the commission. This is well settled. *Texas & P. R. Co. v. Abilene C. O. Co.* 204 U. S. 426, 27 Sup. Ct. 350; *Galveston, H. & S. A. R. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205; *Pennsylvania R. Co. v. Puritan C. M. Co.* 237 U. S. 121, 35 Sup. Ct. 484; *Ill. Cent. R. Co. v. Mulberry Hill C. Co.* 238 U. S. 275, 35 Sup. Ct. 760. Consequently courts have no jurisdiction of controversies growing out of excessive charges or inadequate service. What is a reasonable charge or adequate service is a matter committed by Congress to the determination of one agency of nation-wide jurisdiction, the interstate commerce commission, and courts will not attempt to determine questions relating thereto in advance of their determination by the commission. The reason for this, as stated in *Texas & P. R. Co. v. Abilene C. O. Co.* 204 U. S. 426, 441, 27 Sup. Ct. 350, is

that "if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of a court. In other words, the established schedule might be found reasonable by the commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

Our own railroad commission law, secs. 1797—37m and 1797—12a, provides in effect that any person aggrieved by reason of any overcharge or inadequate service may make complaint to the railroad commission, upon which the commission shall have power to investigate the complaint, to hear the same and decide upon the merits thereof; that upon the finding of the amount of said excess charge the carrier may lawfully pay the same to the shipper, and if it refuses so to do, the party complaining may maintain an action in the courts of this state to recover the amount of such excessive charge as found by the commission, and the finding of the commission shall be *prima facie* proof of the facts found by it. This remedy was held to be exclusive, in so far at least as an attack on a schedule rate is concerned, in *Frank A. Graham Ice Co. v. C., M. & St. P. R. Co.* 153 Wis. 145, 140 N. W. 1097. The reason for such holding is well summarized in the following excerpt from the opinion:

"The statutes referred to show that the whole matter of fixing rates and the remedies for excessive charges is lodged with the railroad commission. The rates in the schedule made and filed constitute the lawful rates until changed in the manner provided, on application to the commission. The schedule rates being by the express terms of the statute the lawful rates, the railroad companies have not authority to charge different rates. They are prohibited by statute from so doing. They can charge neither more nor less than such rates. In a common-law action, therefore, to recover for excessive rates the courts cannot say that the schedule rates are unlawful rates. This obviously is necessary in order to

preserve equality and uniformity in rates and the carrying out of the system established by the legislature in creating the railroad commission."

But it has been said by the federal supreme court, speaking of the interstate commerce act, that "it did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the commission or relate to a subject as to which the jurisdiction of the federal courts had otherwise been made exclusive." *Pennsylvania R. Co. v. Puritan C. M. Co.* 237 U. S. 121, 35 Sup. Ct. 484; *Ill. Cent. R. Co. v. Mulberry Hill C. Co.* 238 U. S. 275, 35 Sup. Ct. 760. And we accordingly find numerous instances in the books where courts have entertained actions at law to recover damages growing out of a failure of the carrier to perform its contract duty, or some other duty definitely established by law, or otherwise, where the determination of the interstate commerce commission is not necessary in order to determine such duty. Thus, in the cases of *Galveston, H. & S. A. R. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205; *Altschuler v. Atchison, T. & S. F. R. Co.* 155 Wis. 146, 144 N. W. 294; and *Wooster v. C. & N. W. R. Co.* 167 Wis. 6, 166 N. W. 431, the railway companies were held in actions at law for damages resulting from breaches of their contracts in their failure to make delivery in accordance with their contracts of shipments; and in *Pennsylvania R. Co. v. Puritan C. M. Co.* 237 U. S. 121, 35 Sup. Ct. 484, and *Ill. Cent. R. Co. v. Mulberry Hill C. Co.* 238 U. S. 275, 35 Sup. Ct. 760, actions were entertained to recover damages for failure to provide sufficient cars and for unjust discrimination in furnishing cars in violation of the carrier's own rule to furnish all shippers on equal *pro rata* basis. The nature of the causes of action of which the interstate commerce commission has exclusive jurisdiction is well illustrated by the case of *Wooster v. C. & N. W. R. Co.* 167 Wis. 6, 166 N. W. 431. That was

an action to recover damages because of the failure of the carrier to deliver a shipment of race horses to the Allentown fair grounds. The question was whether such failure constituted a breach of the contract of shipment or whether it was due to a misrouting. If the latter, the matter was within the exclusive jurisdiction of the interstate commerce commission. If it constituted a breach of contract the court had jurisdiction of the action. Another illustration appears in the opinion of the federal supreme court in *Pennsylvania R. Co. v. Puritan C. M. Co.* 237 U. S. 121, 35 Sup. Ct. 484, where it is said:

"But it must be borne in mind that there are two forms of discrimination—one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the commission has declared the rule to be unjust, redress must be sought before the commission or in the United States courts of competent jurisdiction as provided in sec. 9.

"But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or federal courts."

If more time than necessary has been spent in pointing out the limitations of the exclusive jurisdiction of the interstate

commerce commission in the matter of controversies arising between shipper and carrier, it is because of the sincere assur-ance of the learned counsel for respondent that the principle of those cases in which it has been held that the interstate commerce commission has exclusive jurisdiction of the sub-ject matter involved applies to the cause of action set forth in the counterclaim, as it is apparent that an understanding of the limitations of that jurisdiction is a self-refutation of the contention. Such exclusive jurisdiction is dependent upon the statute, and where there is no statute comparable to the provisions of the interstate commerce act conferring such jurisdiction no similar jurisdiction exists. We have no statute in this state clothing the railroad commission with any power or authority to determine controversies such as are presented by the counterclaim. That pleading sets forth the fact that the plaintiff entered into a contract with the defendant by which it agreed to furnish it with a certain amount of gas and electrical energy for the purposes of run-ning its manufacturing plant. It then alleges that the plaint-iff failed to fulfil its agreements and obligations in such respect, and that damages to the defendant resulted because of such failure. Now we ask where the power is vested in the railroad commission to determine the issue thus pre-sented, or grant relief for the wrong and damages sustained? It is true that the railroad commission has a supervisory and regulatory control over the public utilities of this state in the matter of prescribing reasonable rates and fixing stand-ards of adequate service. But its orders in such respect re-late solely to the future. It has no power to redress any wrongs or grievances arising from the past conduct of the utility. In this case the findings of the railroad commission can be of no assistance to the court. The obligations of the utility are measured by the terms of its contract with the de-fendant. If that is a valid contract, and we now are so assuming, the only issue to be determined is whether there was a breach thereof on the part of the utility and the

amount of the damages sustained because of such breach. This is a judicial question, pure and simple. It is a wrong sustained by the defendant which the railroad commission has no power to redress, neither can it be of any assistance to the courts in determining the rights of the parties.

We have already said that we assumed the contract to be legal. The counterclaim is properly subject to criticism because it does not allege that the contract called for rates approved by the railroad commission, and by virtue of sec. 1797*m*—33, Stats., the utility cannot accept for its service any rates other than those approved by the railroad commission. However, under the liberal rule of construing pleadings most favorably to the pleader we have assumed that the contracts referred to in the counterclaim were legal contracts. If they were legal, we see no reason why they should not be binding upon the utility and why it is not responsible for the damages resulting from the breaches thereof. If for any reason they were illegal, that matter may be pleaded as a defense. However, as the pleadings now stand, the counterclaim states a valid cause of action, of which the court has jurisdiction. It results that the order sustaining the demurrer should be reversed.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on December 13, 1921.