MADREGANO and another, Respondents, vs. WISCONSIN GAS & ELECTRIC COMPANY, Appellant.

*October 16—November 13, 1923.*

*Public utilities: Company furnishing electricity: Dispute with customer: Continuance of service pending trial of issue: Jurisdiction of railroad commission: Of courts: Right of utility to establish regulations: Motion for judgment on pleadings: When granted.*

1. A motion by plaintiff for judgment on the pleadings raises the question whether the facts alleged in the answer are sufficient to constitute a defense to the cause of action set out in the complaint.
2. Where plaintiff's claim is admitted by the answer and no facts are alleged which would defeat it, he may have judgment on the pleadings though the answer contains allegations of new matter which, under sec. 2667, Stats., are deemed denied, thereby creating an issue of fact.
3. In determining whether the facts set up in the answer constitute a defense to plaintiff's cause of action, all the averments of the answer must be taken as true, as allegations in the pleadings of the moving party must be disregarded if they are in conflict with the allegations in the pleading of the opposite party or are denied.
4. He who seeks equity must do equity, and he who comes into a court of equity must come with clean hands.
5. In an action to compel a public utility to furnish electricity to plaintiffs, whose meter had been removed by the utility, allegations of defendant's answer that plaintiffs tampered with the meter so that it did not register the amount of electricity

consumed for four years, and that plaintiffs refused to pay the difference between the amounts registered and consumed, constitute a defense so as to preclude judgment for plaintiffs on the pleadings.

6. The utility, by order of court furnishing electrical service to plaintiffs pending final determination of the action, would have not only its remedy on plaintiffs' bond if the court found some amount due, but the right to again discontinue the service until such amount was paid.

7. The judicial power vested in the courts by the constitution cannot be withdrawn from them and conferred on an administrative body by legislative act.

8. While the reasonableness of rates or rules established by a public utility should be first determined in a proceeding before the railroad commission, the enforcement of rights in relation thereto presents matters which are a proper subject of judicial inquiry.

9. The question whether plaintiffs unlawfully converted current must be determined by the court in accordance with the rates and rules of service established, the railroad commission having no jurisdiction or power to render a judgment under such circumstances, though it could determine whether the rule was reasonable *per se*.

10. A public utility must furnish adequate service to all users at prescribed rates, but may enforce reasonable rules and regulations in respect thereto.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an action in equity to compel defendant public utility to furnish electrical service to the plaintiffs. Upon the answer of the defendant the plaintiffs moved for judgment on the pleadings. The motion was granted, and from the judgment entered the defendant appeals.

*Geo. W. Taylor* of Kenosha, attorney, and *James D. Shaw*, of Milwaukee, of counsel, for the appellant.

For the respondents the cause was submitted on the brief of *Robert V. Baker* of Kenosha.

ROSENBERRY, J. The plaintiffs alleged that they were engaged in conducting a meat market and grocery store and were users and consumers of electricity in their place of

business as well as in their residence; that they had paid all bills rendered to them in accordance with the measurements of the meter installed in their premises; that on the 8th day of September, 1922, the defendant removed the meter from the premises of the plaintiffs and ever since that day has refused and still refuses to furnish the plaintiffs with electricity for use in their place of business and residence.

The complaint further alleges that the defendant justified its conduct by the claim that the plaintiffs were guilty of stealing electrical current during the four-year period and refused to re-install the service unless the sum of $750 should be paid, that being the amount claimed by the defendant company to be due.

The complainants further allege:

"That the said plaintiffs have been, and now are, ready, willing, and able to pay to the defendant for all current or electricity used by them if the meter of said defendant was inaccurate and did not correctly measure the amount of electricity actually used by them, but the said defendant, through its agents and officers, refused to give any basis for its claim of $750 and subsequently offered to take $375, as a condition of the replacing of such meter and the furnishing of electricity to the plaintiffs."

There were other formal allegations. Pursuant to an order to show cause the defendant company was required by order dated September 25, 1922, to furnish the plaintiffs service pending a final determination of the action upon the same terms and conditions as it is furnished to other inhabitants of the city of Kenosha, and as a condition of the making of said order the court required the plaintiffs to execute a bond in the sum of $1,000, with sufficient sureties, conditioned that the plaintiffs would pay for all electrical service furnished by the defendant company to the plaintiffs and pay the customary charge for discontinuing and reinstalling the service to the plaintiffs in the event it should be finally adjudged that the defendant did not wrongfully

discontinue the service.  The defendant answered, and we set out the allegations of the answer because upon the allegations of the answer the determination of the trial court rests.  After the allegations of formal matters and that it had furnished current to plaintiffs for four years the defendant alleges:

"That the plaintiffs wrongfully, unlawfully, and intentionally so tampered with said meters by inserting foreign substances therein and in various other ways that the meters failed to register the amount of electricity consumed by the plaintiffs.  That the defendant company was deceived and misled by the acts of plaintiffs and submitted bills to the plaintiffs computed at the customary rates according to the meter readings, but erroneous in amount because of the wrongful and intentional acts of the plaintiffs in tampering with the meters as above set forth.  That the plaintiffs did pay the bills so rendered, but at the time of such payments well knew that such bills were incorrect because of their own wrongful and unlawful acts in so tampering with said meter.

"That upon investigation, on or about the first of April, 1922, the defendant became suspicious that something was wrong with the mode and method of registering electricity at the premises of the plaintiffs because of the fact that the electric bills seemed small considering the fact that plaintiffs were operating an ice machine run by a two horse-power motor, a meat grinder driven by a one horse-power motor, and also an electric light load aggregating 2,650 watts. That in order to determine definitely whether or not the electricity furnished at the premises of the plaintiffs was being properly measured and paid for according to the schedules of rates filed, the defendant installed a tested check meter on one of their poles outside of the premises and allowed the meter in the premises to continue as it was.  That in approximately four months' operation the check meter showed a consumption of 3,222 kilowatt hours, while the meter in the premises showed a consumption of 651 kilowatt hours, which would make a difference in the bills of the plaintiffs, over and above that already paid by them on the erroneous measurement of electricity above set forth, of not less than $205.68.

"That the defendant then demanded of the plaintiffs that they pay for the electric light and power furnished them, and for which they had not paid, on the basis of an estimated bill covering the four-year period, figured according to the electric light and power actually paid for and the electric light and power which would ordinarily and customarily be used on a premises such as that owned by the plaintiffs where such an electric light and power load was installed, and based also on the amount of electricity consumed during the four months the electricity was correctly measured. That the plaintiffs refused to pay the estimated bill, whereupon the service was discontinued and the plaintiffs informed that before the service would be re-installed they must not only pay the estimated bill for service wrongfully consumed and not paid for, but also the cost of disconnecting and reconnecting the service, which would amount in all to about $750.

"That the plaintiffs refused to pay said bill or any part thereof, and have not paid for the electric light and power consumed by them at the schedule of rates on file with the railroad commission of Wisconsin.

"That it is the usual practice and custom of the defendant, in all cases involving disputes with its customers as to the amount due the defendant under the schedule of rates filed with the railroad commission and in cases of theft or other irregularity, to submit said disputes to the railroad commission for investigation and settlement if said disputes cannot be adjusted between the parties. That in all cases of unpaid balances due for service consumed the service has been discontinued and not reconnected until the amount due the company has been paid together with the cost of disconnecting and re-installing and certain other requirements have been met. That the controversy between the plaintiffs and the defendant as set forth in the pleadings herein was handled by the defendant company under its usual custom and practice.

"That the acts of the defendant and its entire conduct in this matter is entirely within the provisions of the public utilities law, and is a matter purely within the jurisdiction of the railroad commission."

The defendant also alleges that the court was without jurisdiction for the reason that the railroad commission had

full jurisdiction of the subject matter of the action and denied that any damage had been done to the plaintiffs.

Upon the filing of the answer the plaintiffs moved:

"Upon the pleadings of this action, the complaint of the plaintiffs, and the answer of the defendant, for judgment that the injunctional order heretofore entered be made permanent."

The defendant objected to the granting of the motion and offered to prove the allegations set forth in its answer. The motion of the plaintiffs was granted and thereupon final judgment was entered.

The motion for judgment upon the pleadings raised the question of whether or not the facts alleged in the answer were sufficient in law to constitute a defense to the cause of action set out in the complaint. While the answer contains evidentiary matter which should not appear in a pleading, it did contain allegations setting up new matter, and by the provisions of sec. 2667, Stats., these allegations are deemed denied. There was therefore an issue of fact. In some jurisdictions it is held that under such circumstances a motion for judgment upon the pleadings should not be entertained. 14 Stand. Ency. of Procedure, 928, and cases cited. But where the plaintiff's claim is admitted by the answer and no facts are alleged which if established would defeat it, the plaintiff may properly have judgment upon the pleadings. *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 91 N. W. 994; *Wiesmann v. Donald,* 125 Wis. 600, 104 N. W. 916; 15 Ruling Case Law, p. 579, § 13; *Mills v. Hart,* 24 Colo. 505, 52 Pac. 680, 65 Am. St. Rep. 241.

In determining whether or not the facts set up in the answer constitute a defense to the plaintiff's cause of action all the averments of the answer must be taken as true. 14 Stand. Ency. of Procedure, 949, and cases cited.

The allegations contained in the pleadings of the moving party must be disregarded where they are in conflict with the allegations contained in the pleading of the opposite

party or are denied.   The question presented for determination, therefore, is: Were the facts set up in the defendant's answer sufficient in law to constitute a defense to plaintiffs' cause of action?   These allegations may be briefly summarized as follows: that the plaintiffs tampered with defendant's meters so that the meters did not register the amount of electricity consumed by the plaintiffs; that said condition had existed for a period of four years; that the meter, after being tampered with, registered 651 kilowatt hours, whereas the check meter of the same period registered 3,222 kilowatt hours; that after discovering this condition the defendant demanded pay from the plaintiffs for the amount of electrical current so furnished, and upon the refusal of the plaintiffs to pay the amount disconnected the service.   It would seem to require but little more than a statement of the facts set forth in the answer to show conclusively that the plaintiffs are not entitled to judgment.   It is one of the fundamental principles of equity jurisprudence that he who seeks equity must do equity, and equally well established is the other principle that he who comes into a court of equity must come with clean hands.   The plaintiffs under the facts set up in the answer, the truth of which is admitted by the motion, do neither.   It is true that there is a qualified offer to pay any amount found due the defendant, but that offer is contained in the complaint and must be disregarded inasmuch as it is in conflict with the allegations of the answer.   By their motion the plaintiffs in effect conceded that they were guilty of larceny of electrical current and seek the aid of a court of equity to compel the defendant to submit without adjustment of the controversy to conditions which would reopen the way for further inequitable conduct on the part of the plaintiffs.   Upon the pleadings as they stood the plaintiffs' motion should therefore have been denied, the temporary injunction continued in force, and the issues presented by the answer should have been tried out in order that the rights of the parties might be finally

determined.    No doubt if upon the trial the court should find that there is some amount due to the defendant, it would have not only its remedy on the bond but the right to discontinue the service until the amount found due was paid by the plaintiffs.

Inasmuch as there must be a trial of the action, the second contention of the defendant, which is that the court has no jurisdiction, should be noticed.    It was held in the case of *Campbell v. Milwaukee E. R. & L. Co.* 169 Wis. 171, 170 N. W. 937, that the reasonableness of a rule established by a public utility for the conduct and management of its business should be first determined in a proceeding before the railroad commission.    While this is true, when rules are once established the parties may properly appeal to the courts to vindicate their rights in respect thereto.    It should not be forgotten that the judicial power is under our constitution vested in the courts and that it cannot by act of legislature be withdrawn from the courts and conferred upon an administrative body.    When reasonable rates and rules or regulations have been established, the enforcement of rights of parties in relation thereto presents matters which are properly a subject for judicial inquiry.    *Waukesha Gas & E. Co. v. Waukesha M. Co.* 175 Wis. 420, 184 N. W. 702.

The plaintiffs allege in this case that they have not unlawfully converted electrical current to their own use.    The defendant alleges that they have.    The court very properly provided that pending the determination of this dispute the defendant should continue to furnish service.    If upon the trial it shall appear that the plaintiffs have unlawfully converted current to their own use, to the damage of the defendant, the rights and obligations of the parties are to be determined in accordance with the rates and rules of service established.    This is a pure judicial question and involves the exercise of judicial power.    Nor do commissions

have power to render a judgment under such circumstances. If, however, it is contended that the rule is unreasonable, the commission would no doubt have power to determine, not the rights of parties, but whether or not the rule *per se* was reasonable, which, theoretically at least, is a question of fact. A public utility is required to furnish adequate service to all users at prescribed rates and no doubt has the power to enforce reasonable rules and regulations in respect to the furnishing of such service. No question of the reasonableness of a rule is involved in this case, plaintiffs' claim being that within the rules the defendant wrongfully disconnected its service and deprived the plaintiffs of a privilege which they were entitled to enjoy under the law.

The case of *La Crosse v. Wisconsin-Minnesota L. & P. Co., ante,* p. 151, 194 N. W. 47 (decided June 5, 1923), is not applicable to this case.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.