O. S. BAILEY, Appellant, v. INTERSTATE POWER COMPANY et al., Appellees.

No. 39145.

JANUARY 21, 1930.

*A. E. Sheridan* and *Hart & Hart,* for appellant.

*E. R. O'Brien* and *Hurd, Lenehan, Smith & O'Connor,* for appellees.

DE GRAFF, J.—This is an injunction proceeding, and the primary facts at this point may be briefly stated. It appears that, on and prior to the 14th day of May, 1924, the plaintiff (appellant) owed a considerable amount of money to the defendant power company, on account of light, power, and heat furnished him by said company. These arrearages and certain other matters were provocative of a compromise agreement and settlement, which was reduced to writing and signed by the respective parties on the 14th day of May, 1924. Under the

terms of this agreement, the power company credited the appellant Bailey with the sum of $175 on the then arrearage account, "in full consideration of damages sustained on printing agreement, and further, the party of the first part [power company] agrees to liquidate the present arrearage account of O. S. Bailey by the purchase of printed matter from him at custom rates." It was further agreed that Bailey should be placed "on the advertising list of the power company," and that Bailey should pay "all current months' bills due in excess of the amounts due for advertising for the current month." This agreement by its terms liquidated all claims for damages of either party to the date of the signed agreement.

The plaintiff Bailey is the proprietor and publisher of a weekly newspaper of general circulation in the city of Waukon, Iowa, and neighboring territory. The defendant L. A. Walker is local manager of the power company.

On July 25, 1925, a bill was turned into the local office of the power company, to apply on the current electric bill, which included a $7.00 printing bill; and it is this $7.00 bill which provoked the lawsuit, by reason of the fact that the local office would not give Bailey credit for this item on his current light bill. The claim was that Bailey was not entitled to credit under the terms of the memorandum agreement of May 14, 1924. In other words, it was up to Bailey to pay in cash the electric bill for the current month. It appears from the testimony that, when plaintiff came in (sometime during the latter part of July, 1925), to pay his current electric bill for June, 1925, he tendered, as part payment thereof (with other items sufficient to make a total equal to the amount of his June bill), a $7.00 printing bill. The cashier of the power company told him that part of his tender could not be allowed on his current electric bill, but would have to be applied on his old account. She gave him no receipt, therefore, for his June electric bill. However, she gave him credit on his old account for the $7.00 item.

There were conversations between the parties for a few days respecting this matter, but nothing resulted from these conversations. The power company did, after final demand for the payment of the current light bill, on July 29th, discontinue the furnishing of electrical energy used in connection with plaintiff's business. This act culminated in the filing of this

petition for injunction, which was mandatory in character, to restrain the defendant "from further refusal to furnish electrical energy to plaintiff." It is obvious that the appellant knew of the intention of the power company to do the thing it did do, since the appellant testified that he told the local manager that he did not want the wires cut, and that he tendered him "some money" for power. This tender was refused. It is also apparent that the appellant did not pay the current electric bill in full. The conflict between the parties arises from the fact that there were two accounts: one a local, and the other an account with the parent company. This was recognized by the agreement of May 14th in the settlement of the dispute. The appellant, upon the trial, was not able to say that he ever had any bill for job work between May 14, 1924, and the act occurring on July 29, 1925, whereby he was entitled to an offset against the current light and power bill. The local bills against the power company were presented by Bailey during the month that his current light and power bill was presented by the company, and it is quite clear that the appellant did not make any distinction between advertising matter given him by the local office at Waukon and orders for printing that came to him from the parent organization. Appellant charged it "all against local current bills." The testimony of the cashier of the power company, who had served the company during the preceding sixteen years, and who was acquainted with the original contract of settlement, is to the effect that part of appellant's bills which he did bring in for local advertising was applied on his current month's bill, and that part of his bills for printed matter was applied on his old account. In the instant case, the cashier examined the receipted bills for advertising and printing tendered by the appellant, and told him there was $7.00 of it that could not be applied on his current month's bill, but that it had to be applied on the old account. This witness further testified that, after the agreement of settlement in 1924, she never applied on his current bill any receipted bill for printing.

We now turn to appellant's propositions.

I. It is contended (a) that a public utility corporation operating under franchise cannot discriminate between its customers, and must furnish service to all alike, and (b) that ill

feeling or hatred toward any one of its customers is no ground for refusing to furnish electrical energy. It may be conceded, under the doctrine of *Phelan v. Boone Gas Co.*, 147 Iowa 626, that a public utility franchise holder cannot maliciously cut off the supply of electrical energy theretofore furnished to a customer, or discontinue same, as a matter of spite work. Here, there is no affirmative showing that the act of the company on July 29, 1925, was done for the reason assigned by appellant. The appellant had published articles in his newspaper concerning the power company which, inferentially, appellant believed must have been displeasing to said company, and the appellant assumed that the power company did act by reason of what was printed. The reaction under such circumstances was not necessarily reciprocal: that is to say, that, because the appellant had given the defendant cause to harbor a feeling of ill will, the defendant must have harbored such a feeling, and must have acted thereon in doing what the power company did do. This is not true.

It is also true that a court of competent jurisdiction has the power to compel public utility corporations to furnish service to "all alike who are alike situated." However, a corollary quite universally recognized exists: that he only may invoke the rule who is not in arrears for similar services already furnished. A public utility corporation is charged with a public duty, and has the right to promulgate and enforce such reasonable rules as are necessary, to enable it to give the public efficient service. Such a corporation cannot render efficient service to the public unless it can enforce prompt payment of tolls, and the courts recognize that for a non-compliance with a reasonable rule service may be refused.

"The company had the right to refuse the service demanded, as long as the subscriber refused to pay the bill for the preceding month." *Rushville Co-op. Tel. Co. v. Irvin*, 27 Ind. App. 62 (59 N. E. 327).

This cause was affirmed by the Supreme Court of Indiana, 161 Ind. 524 (69 N. E. 258). See, also, *Mobile Elec. Co. v. Nelson*, 209 Ala. 554 (96 So. 713); *Madregano v. Wisconsin Gas & Elec. Co.*, 181 Wis. 611 (195 N. W. 861); *Buffalo County Tel. Co. v. Turner*, 82 Neb. 841 (118 N. W. 1064). The same

doctrine was declared by the Supreme Court of Mississippi in a recent case, *Central Louisiana Power Co. v. Thomas,* 145 Miss. 352 (110 So. 673). It is therein said:

"Appellant cannot be required to stop and adjudicate such claims. It has the right to enforce payment of its current dues and tolls by this summary remedy, regardless of the fact that the patron claims that appellant is indebted to him for an unliquidated demand. To hold otherwise would have the effect of leaving such a public utility as appellant to continue forced service to its patrons pending settlement of counterclaims for unliquidated damages until such claims were settled by the courts. * * * The efficiency of the service depends upon the prompt payment of the monthly tolls and charges."

The decisions relied upon by the appellant in the instant case may be differentiated on the facts from the foregoing cases. *Miller v. Roswell Gas & Elec. Co.,* 22 N. M. 594 (166 Pac. 1177), is illustrative on this point. In that case the company sought to disconnect the customer because the customer declined to pay for past-due service for another and independent use: to wit, a job of wiring at another locality. This case did not involve the question of nonpayment of a current bill for electricity theretofore furnished. It was held by that court that the company could not use the summary remedy of disconnecting its patron in order to enforce the payment of such a claim. See, also, *State ex rel. Webster v. Nebraska Tel. Co.,* 17 Neb. 126 (22 N. W. 237). In the instant case, the appellant already had the benefit of his temporary injunction, pending the trial of this cause on the merits, and, assuming that there was a good-faith dispute as to the correctness of the service bill, sufficient to warrant the issuance of a temporary injunction, this court has held that the trial court, on a final hearing, may properly find the service bill to be correct, and therefore deny the permanent injunction. Pertinent to this proposition, we may quote the language of the opinion in *Spaulding Mfg. Co. v. City of Grinnell,* 155 Iowa 500:

"Our conclusion is that, while the temporary injunction was correctly issued, the final decree was correct * * *."

II. Appellant also contends that his tender of a certain

amount for future service bound the power company to operate, and furnish him electrical energy. This proposition is not sustainable. The mere tender to pay for future service is not sufficient. In *State ex rel. Latshaw v. Board of Water & Light Com.*, 105 Minn. 472 (117 N. W. 827), plaintiff sought, by writ of mandamus, to require the board of water and light commissioners to furnish service which had been discontinued for non-payment of light bills that had accrued and were owed by the patron. He tendered payment for future service. The tender was declined, and further service was refused to be furnished until the arrearage was paid. It is said in opinion:

"Both on reason and authority, the method of collection here in issue was reasonable and proper. With unusual unanimity, such regulations have been sustained alike where there is statutory authority and where there is not."

See, also, *Jones v. Nashville*, 109 Tenn. 550 (72 S. W. 985).

On the equities of the case, the trial court ruled correctly. The decree entered is affirmed.—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.