CUMBERLAND TELEPHONE AND TELEGRAPH COMPANY *v.*
WALTER L. BAKER.

**DAMAGES.**  *Exemplary.   When not recoverable.*

>   A telephone company is not subjected to liability for exemplary
>   damages by the acts of its manager in removing the telephone
>   from the residence of a patron and requiring him, in sending
>   long-distance messages, to prepay charges and send them from
>   the exchange, when such patron, on the claim of poor service,
>   had refused to pay full rental for his residence telephone, in the
>   absence of evidence of wanton, oppressive, insulting, or willful
>   conduct on the part of the manager.

FROM the circuit court of, second district, Panola county.

HON. J. B. BOOTHE, Judge.

Baker, the appellee, was plaintiff, and the telephone com-
pany, the appellant, defendant in the court below.   From a
judgment in plaintiff's favor the defendant appealed to the
supreme court.

The suit was brought in a justice of the peace's court, and the
complaint was that, while plaintiff was a subscriber for a tele-
phone, defendant refused to give him long-distance telephone
connection, and took his telephone out of his house and refused
to put in another one, and that this was a discrimination against
plaintiff, and was done without excuse, wrongfully, wantonly,
maliciously, and willfully by defendant's manager in the town
of Batesville.   From a judgment for plaintiff for $200 defend-
ant appealed to the circuit court. ·

The evidence on the *de novo* trial in the circuit court showed
that plaintiff had a telephone in his residence, and that in the
fall of 1903 he was furnished very inferior service, of which
he often complained, and that when plaintiff paid the monthly
rental for the telephone in October, 1903, he gave defendant
notice that if the service was not improved he would not pay the
full rental for the month of November; that through the month

of November the service continued bad; that on December 5, 1903, defendant's collector presented the bill to plaintiff for the November rental, when plaintiff offered to pay all the bill except forty cents, which he claimed he was entitled to deduct on account of the bad service rendered him; that on December 8th the local manager gave plaintiff notice that if the bill was not settled in full in five days his telephone would be taken out and the bill placed in the hands of a collector, and the local manager instructed the employes on December 14th not to allow plaintiff the right to call parties at the long-distance telephone from his residence, but to require him to go to the central office and pay tolls in advance; that the telephone was discontinued on December 15th, and on the 19th it was removed from plaintiff's residence, all over the urgent protest of plaintiff; and after it was removed the local manager refused to put it back unless plaintiff would pay the forty cents and sign a contract to pay a higher price for the telephone. Plaintiff testified that the local manager had "a bad feeling for him."

The rules of the defendant company introduced in evidence are as follows: "To all Managers: All bills, both tolls and rentals, must be made out and presented for payment on the first of each month. If a subscriber does not pay his bill after it has been presented, in a courteous, polite manner, by the 15th of the month, you will notify him that unless he pays by the 20th you will be forced to discontinue service. If on the 20th the same is still unpaid, you will disconnect the line until the 23d; then, if the account is still unpaid, you will remove the telephone without further notice. You must be certain to give the subscriber sufficient notice, and call him up in person over the telephone before his instrument is removed in order to give an opportunity to settle the account."

*Harris, Powell & Harris,* for appellant.

There is nowhere to be found any evidence of any insult, malice, fraud, oppression, recklessness, or wantonness on the

part of the company or its agents. Baker was notified that he must pay the full rental, and he declined to do it, insisting that the company should accept one dollar instead of one dollar and forty cents. There is no evidence that Baker sustained any pecuniary loss by reason of the defective service which he claimed existed. He does claim that he suffered some damage to his business, after the telephone was taken out, for want of a telephone, but what is not shown. The company proposed to continue the telephone if he would pay the forty cents, but Baker said he would not pay it because, as he says, "he did not want to be run over," and knowing what inconvenience he would be subjected to, if he was subjected to any, he allowed the telephone to be taken out rather than pay the forty cents.

Even should it be determined, in a controversy between Baker and the company, that he did or did not owe the forty cents or whether the company did or did not have the right to collect the forty cents, this would not make out a case for punitive damages. The company may in fact have done Baker a legal wrong, but it would not follow that he would be entitled to punitive damages. It is settled that where a defendant acts in good faith and without malice or wantonness, believing that he has a right to do the act complained of, punitive damages are not recoverable as a rule, even though there may have been a violation of the plaintiff's legal right. 12 Am. & Eng. Ency. Law (2d ed.), 25 ; *Railroad Co.* v. *Fite,* 67 Miss., 373.

The right of the telephone company to enforce its rule, and the reasonableness of the rule, is upheld in the recent case of *Irvin* v. *Rushville Telephone Co.,* 161 Ind., 524, the only case we have been able to find. The rule in that case was in the following words: "All moneys due this company or its toll line connections shall be payable at the office of the secretary on or before the 5th of the month succeeding the maturity of such indebtedness, and if not paid on or before said date, the service of such delinquent shall be discontinued until such indebtedness is fully paid."

The case is an instructive one in its bearing on the case at bar, as it presents nearly all of the features which are presented here. In the first place, the suit was brought to recover penalties on account of the refusal of the telephone company to continue to serve the plaintiff. This is analogous to the claim for punitive damages in the case at bar.

The plaintiff claimed that the telephone company owed him more than he owed the company by forty-five cents, and that at the time he was disconnected and service refused him he did not owe the company a cent.

The reasonableness of the rule, or by-law, was passed upon.

It was insisted that the plaintiff was not notified, at the time he was discontinued or service refused him, why it was refused him.

It was insisted that the rule was not enforced with impartiality.

As to the reasonableness of the rule, the court said: "It cannot be denied that a rule of the company requiring these monthly payments to be made in advance would have been a reasonable rule, and that upon refusal so to pay service could be denied. The company must protect its plant and keep up its efficiency, and may enforce a rule that insures a reasonable revenue and its prompt receipt. It can maintain an efficient service only through prompt payment of its dues and tolls, and because of that fact it may use the summary remedy of denying service for non-payment. It cannot be said it may be denied the benefit of this rule because a patron claims the company is indebted to him. It cannot be required to stop and adjudicate claims held against it. The law compels it to furnish service; a patron may take service or not as he chooses. It must furnish efficient service to all alike who are alike situated, and must not discriminate in favor of or against any one. The law holds the company to these requirements strictly. For failure, the extraordinary remedies of mandamus and injunction may be invoked. It may be said that the courts

are open to the company to collect its claims, but as to this the company and the patron are on an equal footing. The fact that the patron is solvent gives no aid in determining a rule which must apply to solvent and insolvent patrons alike. Keeping in view the nature of the company's duties and the service it may be compelled to render, it must be held that the company may enforce the payment of its current dues and tolls by the summary remedy of denying service regardless of the fact that the subscriber claims the company is indebted to him."

In regard to the point that the plaintiff was not indebted to the telephone company, the court says, quoting from the complaint: " 'The thing we complain of in this case is that the rule was unreasonably applied against the appellant; that under it the appellee refused appellant telephone service when he did not owe it a cent under the rule.' If a corporation authorized to establish and promulgate a rule as a condition to furnishing service has done so, and a patron is charged with notice of the rule and also of the fact that he has violated it, the corporation may refuse him service for such reason without informing him at the precise time of its refusal as to its reasons therefor."

In the case at bar, before service was denied to appellant, he was fully notified in advance that service would be denied him, and he was fully aware of the consequences of his refusal to pay.

On the question as to the partial enforcement of the rule the court in *Irvin* v. *Rushville, supra,* says: "The mere fact that appellee had not enforced its by-law against third persons before that time does not alone furnish a reason why it should not be revived against appellant. As before observed, for aught that appears in the complaint, he may have been fully apprised in advance of the consequences of his refusal to pay."

Again referring to the reasonableness of the action of the company, the court said: "Considering the *quasi* public functions of corporations like the one at bar—corporations whose

first duty is to the public whom they serve—we think that their revenues should not be depleted by the furnishing of service to individuals who refuse to pay because they are asserting collateral demands."

The conclusion which the court reached on the demurrer was that the penalties sued for could not be recovered.

*Lowry & Lamb,* for appellee.

The difference between an action for simple breach of contract and an action against a party owing duty to the public, for breach of contract, by, or accompanied with, tort, is clearly drawn in *Railway Co.* v. *Hanes,* 69 Miss., 160.

That a telephone company is required to serve all members of the public alike, and is liable for compensatory damages for a negligent failure and to punitive damages for a willful failure to do so, is so well settled that it scarcely needs citation of authority.    25 Am. & Eng. Ency. Law (1st ed.), 747, 750, 775; *Telephone Co.* v. *Falley* (Ind.), 10 Am. St. Rep., 114. Besides, they are declared common carriers and liable as such by sec. 195 of our constitution.

A failure to give telephone connection, to replace the telephone on proper demand, and the taking out of a telephone over objection of the subscriber, would be subject to same damages as a railroad company is subject to for failure to carry freight.    If such a failure is willful, the railroad company is liable in punitive damages.    *Avingee* v. *Railroad Co.* (S. C.), 13 Am. St. Rep., 716.

It is not necessary that there should be direct testimony of willfulness, but if the circumstances in evidence are such that the jury might reasonably conclude that some of the elements for punitive damages were there, then the matter should be left to the jury under proper instructions.    *Railroad Co.* v. *Harper,* 83 Miss., 561; *Railroad Co.* v. *Drummond,* 73 Miss., 813; *Railroad Co.* v. *Riley,* 68 Miss., 765; *Telegraph Co.* v. *Watson,* 82 Miss., 101; *Telegraph Co.* v. *Seed* (Ala.), 22 South. Rep.,

474; *Telegraph Company* v. *Cunningham* (Ala.), 14 South. Rep.; 579.

In the case of *Irvin* v. *Rushville Tel. Co.,* 161 Ind., 524, relied on by the appellant, while there are some points of similarity to the case here, there are also some striking differences, which take the pith out of the appellant's contention. In that case the subscriber was a stockholder in the company, and was held to know and be bound by its rules. It was a suit for statutory penalties, which are recoverable only when the patron should "comply or offer to comply with the reasonable regulations of the company." The demand set up against the claim for telephone rent was a set-off—an independent demand not "growing out of the relation of the parties as telephone company and patron."


TRULY, J., delivered the opinion of the court.

Under the facts of this case it was error to submit the question of exemplary damages to the consideration of the jury.

"It has been held in this state that punitive damages may be recovered only in cases where the acts complained of are characterized by malice, fraud, oppression, or willful wrong evincing a disregard of the rights of others. There must be some element of one or more of the qualities or properties named, relating to the acts made the ground of the action, before exemplary damages can be inflicted." *Railroad* v. *Marlett,* 78 Miss., 872 (29 South. Rep., 62). Accepting as true all the facts stated by appellee in reference to the removal of the telephone after his refusal to pay the agreed rental for the month which had just ended, none of the elements necessary to characterize the act as wanton, willful, oppressive, and malicious existed. It may be that the manager or other employe of the appellant misinterpreted the rules established by the company to be enforced in such contingencies; but if this be true, it would only authorize the recovery of compensatory damages, unless the actions of the employes were not only wrong, but committed with a knowl-

edge of their wrongfulness. Every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, but not every legal wrong entitles the injured party to recover exemplary damages. Punitive damages are allowed not solely nor chiefly for the benefit of the particular individual injured, but are awarded on the well-established principle of law that they may have a deterrent effect and protect the general public against a repetition of similar offenses. The instructions of the court, considered as abstract propositions, are phrased with striking accuracy, but those authorizing the infliction of punitive damages are not applicable to the facts of the case presented.

. We refrain from entering upon any discussion of the relative rights of telephone companies and patrons where, from atmospheric conditions, defective appliances, or other similar causes, inefficient and unsatisfactory service is rendered by the telephone companies. This is an important question, and we prefer to leave it until presented for necessary decision.

*Reversed and remanded.*