### CENTRAL LOUISIANA POWER CO. *v.* THOMAS.*

(Division B.   Jan. 3, 1927.   Suggestion of Error Overruled Jan. 31, 1927.)

[110 So. 673.   No. 26054.]

ELECTRICITY. *Public service company may, according to rules, shut off electricity for nonpayment for previous month, notwithstanding counterclaim for unliquidated damages.*

A public service corporation engaged in furnishing electricity may shut it off, according to its reasonable rules, if, before the 15th of month, bill for electricity furnished up to the 20th of the preceding month be not paid, notwithstanding counterclaim of patron for unliquidated damages for electricity having been cut off through some mishap.

ON SUGGESTION OF ERROR.

[111 So. 142.]

1. INJUNCTION. *Chancery court on bill fundamentally for injunctive relief does not have jurisdiction of demand against foreign corporation for unliquidated damages.*

Where bill against foreign corporation is fundamentally one for injunctive relief, and not recovery of damages, chancery court does not have jurisdiction of demand for unliquidated damages.

2. ELECTRICITY. *Customer's claim of damages for shutting down of plant after electricity was shut off is purely legal demand.*

Customer's claim against public service corporation, furnishing electricity, for damages for shutting down of plant after electricity was shut off, is purely legal demand, and cognizable only in court of law.

*Corpus Juris-Cyc. References: Electricity, 20CJ, p. 333, n. 90; Injunctions, 32CJ, p. 384, n. 54.

APPEAL from chancery court of Pike County.

HON. R. W. CUTRER, Chancellor.

Suit by C. J. Thomas against the Central Louisiana Power Company for injunction and damages. Decree for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Green, Green & Potter,* for appellant.

I. *Appellee's check given for power being bad, the appellant acted properly in cutting off the power irrespective of all else.*

(a) Only those who come into equity with clean hands can have relief. In giving this check appellee was guilty of a violation of the law and can have no relief predicted thereon.

(b) But having given a bad check there was no payment of the precedent bill thereby and all rights open. *Odeneal* v. *Henry,* 70 Miss. 181; *College Point Boat Corp.* v. *U. S.,* 267 U. S. 12, 69 L. Ed. 490.

"If the acceptance of the check was induced by fraudulent representations, it does not constitute payment." *Martin* v. *Pennock,* 2 Pa. St. 376. See, also, *Wileman* v. *King,* — Miss. —, 82 So. 265.

Thus with this bad check as the sole predicate for payment there was no payment; and being no payment, there was a default existing at the time that the service was discontinued that entitled the appellant to cut the service off. *Cumberland Tel. & Tel. Co.* v. *Magruder,* 92 Miss. 716; *Baker* v. *Telephone Co.,* 85 Miss. (1904) 486; *Baker* v. *City of Water Valley,* 87 Miss. (1905) 737; *Telegraph Co.* v. *Hobert,* 89 Miss. 259 (1906); *W. U. Tel. Co.* v. *Teague,* 78 So. 616; *Meridian Light & Ry. Co.* v. Steele, 83 So. 415. See also *McDaniel* v. *Springfield Water Co.,* 48 Mo. App. 273; *Sheward* v. *Citizens Water Co.,* 90 Cal. 635, 27 Pac. 439; *Shiras* v. *Ewing,* 48 Kan. 170, 29 Pac. 320; *Irwin* v. *Rushville Telephone Co.,* 161 Ind. 524.

Hence, when Thomas was so in default, he could not complain of the discontinuance of service, because the check which he gave was not payment and was not paid until long after the service was discontinued. A bad check, in violation of the laws of Mississippi, is not a valid predicate for the issuance of a mandatory injunction.

(c)   A mandatory injunction improperly issued without notice on a fundamentally untrue statement of appellee necessitates dissolution. It affirmatively appears that appellee had been disconnected prior to the date of the institution of a suit and the obtaining of the injunction, so the injunction must be dissolved. *Dixon* v. *Green County*, 76 Miss. (1899) 794; *Pearman* v. *Wiggins*, 103 Miss. 4. See also, *Miles* v. *Fink* (Miss.), 80 So. 534.

Here appellant had not received the revenue to which it was entitled and had failed to receive such revenue by the fraudulent act of appellee in executing and delivering a bad chack. Now, if there is a fundamental misstatement made by a party obtaining an injunction, upon the court being advised thereof, the injunction will be dissolved. 32 C. J. 403, 14 R. C. L. 331. Here appellee failed to disclose this total failure of appellee to do that which he should have done—pay what was just and owing. Failing therein, appellee misrepresented that which he had done; and misrepresenting, must not therefrom profit.

(d)   Injunction not granted against wrongs already perpetrated. *McDaniel* v. *Hurt*, 92 Miss. 197, 41 So. 381.

II.   *Appellee is not entitled to recover because of a contract declared on and not proved.*

The only liability of appellant could be under its duty at law as a public servant. *Carnaggio Bros.* v. *Greenwood*, 108 So. 141; *Burke* v. *Water Valley*, 40 So. 820, 87 Miss. 732; *Ginnings* v. *Meridian*, 56 So. 450, 100 Miss. 507. But as herein shown, there is no such liability as could be hereunder and herein asserted.

III. *Contract did not call for continuous current, and contingencies beyond control of appellant imposed no liability.*

Parties may, of course, assume absolute obligations, if they are so minded, but such assumption must be clear. 13 C. J. 635.; *North German Lloyd* v. *Guaranty Trust Co.,* 244 U. S. 22, 61 L. Ed. 965.

IV. The decree should be reversed on the facts.

There was no agreement on the part of appellant to accept this claim in full for unliquidated damages at its face of fifty-six dollars. Appellant never consented so to do, and without appellant's consent, under the universal rule, there could be no satisfaction of the debt—no payment of it.

Appellant was not compelled to admit that appellee could be judge in his own case, and that the judgment fixing the fifty-six dollars was a satisfaction of the admitted claim of the appellant to the extent of that amount, and that the claim for two hundred nine dollars and forty-five cents was reduced by appellee in his own case to one hundred fifty-three dollars and forty-five cents. The precise point was decided in *Rushville Telephone Co.* v. *Irwin* (1901), 27 Ind. App. 62 at 67; *Irwin* v. *Rushville Telephone Co.,* 69 N. E. 259 at 261; *Goodwin* v. *Cadwallader,* 87 N. E. 694. This rule so established in Indiana has had the sanction of the United States supreme court in *Southwestern T. & T. Co.* v. *Danaher,* 238 U. S. 489, 59 L. Ed. 1422. It will be noted that the service of the appellant was interstate commerce; and, therefore, the opinion of the United States supreme court is absolutely controlling.

The same rule was applied in *Buffalo County Tel. Co.* v. *Turner,* 118 N. W. 1064 (Nebr., 1908), where it said: "A rule of a rural telephone company that telephone rent be paid six months in advance is reasonable; and a subscriber refusing to comply therewith, is not entitled to service from the company , ... , Nor will the ex-

istence of a counterclaim or set-off asserted by the subscriber, a large part of which is exorbitant and illegal, justify him in demanding that he be given service without prepayment of changes as other subscribers pay." See, also, *Southwestern Tel. Co.* v. *Murphy,* 140 S. W. — (Ark., 1911) ; Jones on Telegraph and Telephone Companies, section 352 at page 337; 2 Joyce on Electric Law (2 Ed.), section 687 at page 1100.

We have found no contrary authority which denies the right of a public service corporation, whose bills are small, whose customers numerous, whose master the public is, to demand that they be paid their charges in cash, and one who has a demand against it can have recourse to the courts but the companies are not compelled to recognize such demands as cash.

### V.   *Recoupment is not allowable.*

Appellee claimed that during the prior month he had been shut down for six days, so that appellant was liable for loss of profits aggregating fifty-six dollars, which amount the appellee undertook, without the consent of the appellant to deduct from the amount confessedly due the appellant. Thereby, appellee took into its own hands the computation of the amount of compensation it would pay for the rendition of the service, and demanded that appellant acquiesce in the determination made by the appellee and confess (1) that the contract was absolute and obligatory; (2) that the contract had been breached by reason thereof by appellant; (3) that the unliquidated damages in the form of profits therefrom arising aggregated fifty-six dollars. Could appellee as against a public service corporation make such an exaction? See *Birmingham Ry., Light & Power Co.* v. *Littlejohn,* 77 So. 570; *Carnaggio* v. *Greenwood,* 108 So. 141; *Burke* v. *Water Valley,* 40 So. 820, 89 Miss. 732; *Cumberland Tel. Co.* v. *Baker,* 37 So. 1012.

As to an unliquidated liability, the appellee assumes to be a judge in his own case and to determine (1) the law

as to liability, and (2) the admeasurement of damages. *In re Duncan,* 139 U. S. 454; *Mayer* v. *San Diego,* 41 L. R. A. 764; *First Nat'l Bank* v. *McGuire,* 76 Am. Rep. 600; *Ex Parte Ellis,* 25 L. R. A. 653; Brown's Legal Maxims (7th Ed.), 166.

The company had just as much right to declare the appellee was not entitled to any amount whatsoever by reason of the acts of God that suspended the service; and even if the company was liable, that the amount of liability did not exceed twenty dollars, as appellee did to declare the liability was fifty-six dollars. *Mansfield* v. *Humphries Mfg. Co.,* 31 L. R. A. (N. S.) 308.

*Price & Price* and *R. S. Stewart,* for appellee.

I. On the date service was discontinued the appellee had paid the bill covering the September consumption of power and was not in arrears for any bill rendered to him at that time or that was due. The record shows as an exhibit a check bearing date of October 17, 1925, for the sum of one hundred fifty-three dollars and forty-five cents, and with this check was sent a debit memorandum of fifty-six dollars for fourteen bales of cotton, the ginning of which the appellee lost because of the failure of the appellant to furnish the power it itself had obligated to furnish, and this was tendered as a settlement of the bill amounting to two hundred nine dollars and forty-five cents.

The appellant knowing that the tender of the check and the debit memorandum were intended as a settlement in full of the bill rendered by it to appellee, and while denying the correctness and the justice of the appellee's demand, accepted the check, deposited it and later collected it.

On October 24 the appellant demanding the payment of the balance of the bill amounting to fifty-six dollars, this being the amount deducted by the appellee for short current or power not furnished, refusing to abide an arbi-

tration of the difference between it and the appellee, and declining to give the appellee a chance to obtain an injunction to test out the justice of his demand, highhandedly and arbitrarily cut off the power and refused to furnish appellee the power it had obligated itself to furnish him, whether by contract or imposition of law, and now for the first time, on appeal, it undertakes to justify its unwarranted and overbearing conduct by saying that the appellee gave it a bad check and that, therefore, on the date the service was discontinued, the appellee had not paid the undisputed part of the bill.

On the trial of this cause no contention was made that the check for one hundred fifty-three dollars and forty-five cents had not been paid; for, as a matter of fact, the check had been paid previously, on November 25, as shown by a receipt. The only reason that appellant claimed on the 24th for disconnecting the power from the appellee's gin was because he insisted upon the credit amounting to fifty-six dollars and it was attempting to force him to pay it, whether just or not, and refused to submit to arbitration or to give the appellee time to obtain process so that it could be submitted to the court for adjudication.

We, therefore, submit that the various cases cited in appellant's exhaustive brief, as to bad checks, the effect of same and the right of the public service corporation to discontinue service because of nonpayment of a bill, have no application to the facts in this case.

II.    The check and the debit memorandum were tendered as a settlement in full and were a settlement in full of the account. The appellant could not accept the check and decline to accept the account or give the credit, for the offer was an entirety, not severable; and when the appellant accepted the check, the law forced the acceptance of the credit asked by the appellee. *Greener & Son* v. *P. W. Cain & Sons,* 137 Miss. 33, 101 So. 859 (1924).

III.    The temporary mandatory injunction was rightfully granted upon the showing made. No court has an-

nounced the rule that an injunction cannot issue without first having a hearing in the case, and the law in our state is that such injunction may issue even if a mandatory injunction. *Ex Parte Perason* v. *Wiggins,* 103 Miss 4, and cases cited; 6 Pomeroy's Equity Jurisprudence, paragraph 636; *Gulf Coast Co.* v. *Bowers,* 80 Miss. 570, 32 So. 113; *Miles* v. *Fink,* 80 So. 534.

The injunction was properly granted and the court's attention is addressed to the fact that this bill was filed and the bond given and writ issued, not after the disconnection of the current, but before. It is settled that the injunction should not be dissolved or damages awarded if at the time of the granting of the injunction, the complainant was entitled to it. *Burroughs* v. *Jones,* 79 Miss. 214, 30 So. 605.

IV. Appellant argues that the appellee in demanding this credit of fifty-six dollars set his price, acted as judge and juror and that the appellant was within its right when it discontinued service. Ordinarily, a complete answer to this contention would be to say that the appellee had just as much right to fix his price for damages and demand the same as an off-set to the appellant's demand. as the appellant had to fail in furnishing service and then say that it is not answerable for any loss sustained by the appellee; but it is well settled that the courts are the proper forum to settle disputes and adjudicate differences and we submit that on the very date that service was discontinued by the appellant, the appellee requested it not to cut off his motive power until he could obtain an injunction to test out their respective rights, but that without waiting and without being willing to submit said matter either to arbitration or the judgment of the court, the appellant before it could be restrained and knowing that such order would be forthcoming, discontinued service.

It is urged that the appellee should have paid the amount demanded and resorted to court to recover same;

but see *Woods* v. *Auburn,* 29 L. R. A. 376.; *Cumberland Tel. & Tel. Co.* v. *Baker,* 37 So. 1012.

We have here a perfect demonstration of a public service corporation, a servant of the people ignoring the rights of an individual, disobeying the order of the court, and denying service of power to a customer in an effort to coerce such customer into the the paying of an unjust account. The lower court correctly held that as a matter of equity this could not be done.

Argued orally by *Garner W. Green,* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellee, C. J. Thomas, filed his bill in the chancery court of Pike county against the Central Louisiana Power Company to enjoin the latter from cutting off the electric current furnished by it to the appellee for the running of his gin and grist mill situated in the town of O'syka, and to require appellant to continue furnishing such current, and for damages claimed to have been suffered by appellee on account of having been deprived of such current. On an *ex parte* application, appellee obtained from the chancellor a temporary injunction in accordance with the prayer of the bill. Later, there was a trial on bill, answer, and proof, resulting in a decree making the injunction prayed for perpetual, and awarding appellee damages in the sum of four hundred twenty-five dollars. From that decree, appellant prosecutes this appeal.

Appellee was engaged in running a public' gin and grist mill in the town of O'yska, and appellant, a public service corporation, was engaged in furnishing to the inhabitants of said town electric current for lighting and power purposes. Appellant had in force a rule which provided that, on failure of its patrons to pay their bills for electric current, when due, such current should be cut off.

The monthly charge by appellant against appellee for the current to operate his gin and grist mill was a minimum charge of twenty dollars per month, whether the current was used or not, and, in addition, four cents per kilowatt. Appellee's bill for the month ending on the 20th day of September was two hundred nine dollars and forty-five cents. Under the rules of appellant, the bill was payable on or before the 15th of October. On the 1st day of October, according to custom, appellant sent appellee a statement of the amount due. Previous to that time, through some mishap over which appellant claimed to have no control, the electric current furnished appellee for the running of his gin and grist mill was cut off for a short time, as a result of which appellee claimed he was damaged in the sum of fifty-six dollars on account of not being able to run his gin and grist mill during the time he was deprived of current. On receipt of the bill from appellant, the appellee sent appellant a check on his bank for one hundred fifty-three dollars and forty-five cents, and along with it a charge bill of fifty-six dollars, which latter represented unliquidated damages claimed by appellee to have been suffered by him on account of having been so deprived of the electric current with which to run his plant. Appellant refused to recognize and allow this charge bill of fifty-six dollars, and demanded of appellee payment of the whole amount of his bill, two hundred nine dollars and forty-five cents, and, on appellee's refusal to pay same, appellant cut off the power being furnished him for his mill and gin plant. This action was taken by appellant after the bill in this case was filed, but before the writ of injunction was served.

Was it the duty of appellant, under the law, to continue to furnish appellee electric power for his gin and mill plant, pending settlement in the courts, or otherwise, of appellee's counterclaim? In considering this question, the fact should be kept in mind that appellant's business is affected with a public interest. It is

a public service corporation, furnishing electric current for power and lighting purposes to the inhabitants of the town of Osyka. Under the law, it can be compelled to furnish electric current to the communities it is serving, under reasonable rules and regulations as to the manner of furnishing such service, its tolls therefor, and when such tolls are payable. Under appellant's rules, its tolls for current furnished are payable monthly on or before the 15th of each month for the month ending on the 20th day of the month previous, and its rules also provide that if such charges are not paid by that time, appellant shall have the right to cut off the electric current of its delinquent patrons. Such rules are reasonable and necessary to properly protect and carry on the business appellant is engaged in. They are necessary to protect appellant's plant and keep up its efficiency. The enforcement of such rules is necessary to insure a reasonable revenue from the character of business appellant is engaged in. Appellant can maintain an efficient service only through prompt payment of its monthly tolls, and, because of that fact, it should have the right to resort to the summary remedy of denying service for nonpayment of tolls. Appellant cannot be denied the benefit of such rules because a patron presents a counterclaim for unliquidated damages. Appellant cannot be required to stop and adjudicate such claims. It has the right to enforce payment of its current dues and tolls by this summary remedy, regardless of the fact that the patron claims that appellant is indebted to him for an unliquidated demand. To hold otherwise would have the effect of leaving such a public utility as appellant to continue forced service to its patrons, pending settlement of counterclaims for unliquidated damages, until such claims were settled by the courts. Such forced service might continue indefinitely, and, because thereof, the efficiency of the service to the public might be materially interferred with. Such public service corporations as appellant, as a rule, have

no revenues except their monthly tolls and charges against patrons, who are numerous, and which tolls and charges usually are only a few dollars per month for each patron. The efficiency of the service depends upon the prompt payment of the monthly tolls and charges. The expenses incident to their collection by legal proceedings might be prohibitive. *Rushville Telephone Co.* v. *Irwin,* 27 Ind. App. 62, 59 N. E. 327; *Goodwin* v. *Cadwallader,* 172 Ind. 619, 87 N. E. 644, 89 N. E. 319; *Buffalo Telephone Co.* v. *Turner,* 82 Neb. 841, 118 N. W. 1064; 19 L. R. A. (N. S.) 693, 130 Am. St. Rep. 699; *Southwestern Telephone Co.* v. *Danaher,* 238 U. S. 489, 35 S. Ct. 886, 59 L. Ed. 1419; 2 Joyce on Electric Law (2 Ed.), section 687, p. 1100.

There was no allegation that appellant was insolvent, and therefore could not be made to respond in damages for its alleged failure to furnish appellee current to run his gin and grist mill. Appellee had a complete remedy at law for the recovery of the damages he claimed, if he was entitled thereto.

We are of opinion that appellant had the right to deprive appellee of the current to run his mill and gin plant, because of his failure to pay the tolls he was due appellant for the previous month, and that that is the sounder and better rule, even though appellee's counterclaim was just and due from appellant. Appellee should have continued to pay his monthly bills and brought suit against appellant for damages suffered by him for the alleged wrong of appellant in depriving him of the current to run his mill and plant. We think to hold otherwise would so hamper the operation of a public service corporation of the character of appellant that it would materially interfere with its efficiency. This question was not decided in *Telephone Co.* v. *Baker,* 85 Miss. 486, 37 So. 1012. The only question decided in that case was whether, under its particular facts, the

question of exemplary damages ought to have been submitted to the jury.

Reversed and judgment here for appellant.

*Reversed.*

### ON SUGGESTION OF ERROR.

ANDERSON, J., delivered the opinion of the court.

Appellee, in his brief on the suggestion of error, argues that the chancery court had jurisdiction of his demand against appellant for the unliquidated damages, because appellant was a foreign corporation. He cites decisions of this court to the effect that the courts of chancery of this state have jurisdiction in such causes, given by statute. The trouble about that proposition is this: The bill in this case was not a foreign attachment in chancery; it was a bill for injunction against appellant. The injunction was issued and served on the manager of appellant's plant at O|syka, in this state. The gravamen of the bill was not to recover a sum of money, but to enjoin appellant from withdrawing its electric current from appellee's gin and mill plant, and, incidentally, to recover damages claimed to have been suffered by appellee on account of such current having been withdrawn from his plant at a time prior to the filing of the bill. The bill was fundamentally one for injunctive relief, and not for the recovery of damages.

And, furthermore, the decree for damages cannot stand for the reason that it covered the damages suffered by appellee on account of appellant's cutting off the current because appellee refused to pay his monthly bill, as well as the damages suffered by appellee in being deprived of the current during a period some time prior thereto through the alleged fault of appellant. In the opinion gone down, we held (and we adhere to that holding after a reconsideration of the question) that appellant had the right under the law to cut off the current to appel-

lee's plant, because he had failed to pay his monthly bill overdue. It follows, therefore, that so much of the decree as awarded the appellee damages for so depriving him of the current cannot stand; and it appears that the larger part of the decree, which was for four hundred twenty-five dollars, was based on that action of the appellant. The appellee only claimed damages for being deprived of the current the first time in the sum of fifty-six dollars.

As to whether appellee is entitled to recover from appellant for the shutting down of his plant at the period prior to the filing of the bill in this cause, for which he claimed to have suffered damages in the sum of fifty-six dollars, this question it left open for the decision of the proper court having jurisdiction of the claim. It is purely a legal demand and cognizable only in a court of law.

*Suggestion of error overruled.*