COSPELICH *v.* MISSISSIPPI POWER CO.

(Division A.   Oct. 31, 1932.)

[144 So. 38.   No. 30202.]

William Estopinal, of Gulfport, for appellant.

90

Eaton & Eaton, of Gulfport, and Baskin, Wilbourn & Miller, of Meridian, for appellee.

**McGowen, J.,** delivered the opinion of the court.

About April 11, 1930, Cospelich, the appellant, made application for service of electrical energy to Mississippi Power Company, for a filling station operated by him, which contained the following provision: "The undersigned requests Mississippi Power Company to furnish subject to its rates and service regulations in effect from time to time, the service and facilities named herein as may be requested from time to time and agrees to pay all service and other charges in accordance with said rates and service regulations. Upon the beginning of the service applied for herein, or which may be applied for hereafter, this application becomes a contract for a term of one year and thereafter until terminated by either party upon thirty days' written notice."

At or about the same date, the power company issued to the appellant a receipt for ten dollars, required by the company as a deposit from its customers, containing the following provisions:

"This is to certify that the above amount has been deposited with Mississippi Power Company as security for the payment of all bills for electricity, gas or for any appliances used in connection with same, or for any material of any kind purchased from or services rendered by said company.

"Upon discontinuance of service and surrender of this receipt, the amount of this deposit less any amounts due

said company deductible therefrom will be returned to depositor. The company will pay interest on this deposit less any deductions at the rate of eight per cent per annum from date hereof, payable when deposit is returned or annually as earned upon request of depositor, provided depositor has been served by the company longer than six months. Interest ceases when service is discontinued. Conditions on reverse side hereof are a part of this receipt.

"MISSISSIPPI POWER COMPANY,
"By WALLACE CHAPMAN,
"L. M.                                    L. A. Cashier, C. A.
"I accept the above conditions.
"—————Depositor."

And on the reverse side the following: "The Company will not connect its service with premises described in depositor's application unless depositor has complied with the state and municipal regulations on the class of service applied for and with the rules and regulations of the Company, . . . nor until all bills for service rendered to or materials purchased by depositor previously at any time and at any place have been paid in full. In event depositor fails to comply with such conditions this deposit may be returned to depositor and the deposit is accepted by the Company with this understanding, and such return of the deposit or the tender of the same to depositor as herein provided terminates and ends all of depositor's rights under application for service."

The appellant company furnished electrical energy to Cospelich from the date of the receipt of the ten dollars until late in September or early in October. Cospelich was unable to pay his bills for service from August 5 to September 5, 1930, and from September 5 to October 11, 1930; and, when the representative of the power company presented its bill for the two months in arrears, demanded payment thereof, and was refused payment by the appellee, Cospelich, the power company disconnected

the wires of the company from the filling station of the appellee, and thereby deprived him of that service.

The bill for two months' service, presented to the appellee on October 11, 1930, showed the amount of four dollars and ninety-one cents due the power company for electricity theretofore furnished.

On the day the power company disconnected its service, and subsequent thereto, Cospelich demanded of the representatives of the company that they deduct from the ten dollars deposit the unpaid bill of four dollars and ninety-one cents and continue to furnish him service until he had exhausted the balance of the deposit, but did not offer to continue to leave with the company any additional deposit. The company declined to comply with this request.

Cospelich offered evidence tending to show damage thereafter, amounting to a considerable sum as detailed by him, because of the discontinuance of electrical service, contending that he had the right to have the money on deposit, which belonged to him, applied to the payment of his current bills until same was exhausted, and that the disconnection of such electrical service was a willful wrong by which his business was greatly damaged.

It was also shown in evidence that the rule of the power company was that no part of the customers' deposits should be applied to their bills until after service was discontinued.

The Mississippi Power Company is a public service corporation generating and selling electricity to the public at Biloxi, Gulfport, and other points along the coast.

At the conclusion of the evidence, the court below gave a peremptory instruction to the jury to find a verdict for the appellee, the power company, and an appeal from that judgment is prosecuted here by the appellant, Cospelich.

There is no material conflict in the evidence.

Appellant insists that the court should not have decided whether or not the rule in question was reasonable, but should have submitted to the jury the question of the reasonableness or not of the rule requiring a deposit to be maintained by the company's customers during the continuance of their service, and cited the case of Mississippi Power Company v. Byrd, 160 Miss. 71, 133 So. 193. In this case there was an issue of facts as to whether or not notice had been given by the power company to the customer of its intention to disconnect its service, the plaintiff therein denying notice and the defendant asserting notice; and the court there said that that question should properly be submitted to a jury, making it apparent that this case is of no aid to us in this cause. The reasonableness of the rule was a question of law for the court, and not a question of fact for the jury.

It is next insisted, if we understand counsel's brief, that a reasonable construction of the contract or rule is that a customer who makes a deposit of ten dollars with a public service corporation, in order to secure electrical energy from the corporation, has a right to have applied on past-due bills a portion of that deposit in discharge thereof and to be allowed to continue the use of the service.

In the case of Southwestern Telegraph & Telephone Company v. Danaher, 238 U. S. 489, 35 S. Ct. 886, 888, 59 L. Ed. 1419, L. R. A. 1916A, 1208, that court said: "It uniformly is held that a regulation requiring payment in advance or a fair deposit to secure payment is reasonable, and this is recognized in the brief for the plaintiff where it is said that to protect themselves against loss telephone companies 'can demand payment in advance.' If they may do this, it is difficult to perceive why the more lenient regulation in question was not reasonable."

In the case of Central Louisiana Power Co. v. Thomas, 145 Miss. 352, 110 So. 673, 111 So. 142, this court practical-

ly settled the question presented here, in which it was held that a public service corporation engaged in furnishing electricity may shut it off, according to its reasonable rules, if, before the 15th of the month, bill for electricity furnished up to the 20th of preceding month be not paid, notwithstanding counterclaim of patron for unliquidated damages for electricity having been cut off through some mishap; and it was there said: "Appellant can maintain an efficient service only through prompt payment of its monthly tolls, and, because of that fact, it should have the right to resort to the summary remedy of denying service for nonpayment of tolls. . . . The efficiency of the service depends upon the prompt payment of the monthly tolls and charges." In that case it was sought to interpose an unliquidated claim for damages as against the company's bill for service, which damage claim was not allowed to be thus presented in settlement of the monthly tolls.

This precise question and contract in all of its essential elements was before the Georgia court in the case of Georgia Ry. & Power Co. v. Peck, 17 Ga. App. 652, 88 S. E. 33, 35. The deposit in that case was five dollars, and the same claim was interposed there by the customer as is interposed here by Cospelich. In denying the customer's right to thus pay his electrical tolls, the court said: "We have not been able to find any case in which it has been held that a deposit made to secure the performance of a contract will prevent a default in the payments under the contract. On the contrary, all the decisions on this point hold that failure to pay the amounts as they fall due under the original contract breaches the contract."

In Arnold v. Alabama Power Co., 206 Ala. 506, 90 So. 909, 910, the same question was presented, and the court in denying the customer's contention there made, as here presented, said: "There is nothing in the contract or application for service signed by plaintiff and exhibited

in his pleadings which require the defendant to apply such deposit 'upon any unpaid bill or bills' by the plaintiff-consumer, but the reasons for the deposit would prevent such application in a case where there was a continuance of service;'' and to the same effect is Ponds on Public Utilities, p. 308.

In the case of Irvin v. Rushville Co-operative Telephone Company, 161 Ind. 524, 69 N. E. 258, 261, the court said in this behalf: ''What appellant asserts is that he has an independent claim against appellee sufficient to extinguish the latter's claim, and that the company must continue to furnish him service, and go into a court as a suitor if it desires to collect its bill, or at its peril defend suits for penalties which might be accumulated ad infinitum. . . . We think that their revenues should not be depleted by the furnishing of service to individuals who refuse to pay because they are asserting collateral demands against it.''

The contract in this case clearly presupposes that the ten dollars was to remain on deposit as a guaranty not only for the payment of current electric bills, but also for the payment of any other services by the power company, and a safe return of the company's property used in connection with the installation of electricity in Cospelich's place of business. The stipulation is plain that the deposit is to be repaid to the customer upon the termination of his contract, and then, only, was any part of the deposit to be applied to his unpaid bills. The deposit would be no protection to the public utility corporation if Cospelich's contention and construction of the contract were upheld. If any part of such deposit were applied to an unpaid bill, there would be no deposit as contemplated by the application and receipt. The rule is reasonable, and the appellee, Cospelich, cannot demand payment of his unpaid bills from the sum deposited and at the same time demand a continuance of the service on

the part of the public service corporation. The reasons announced in the case of the Central Louisiana Power Co. v. Thomas, supra, are applicable here in all respects. Affirmed.