## WOMACK *v.* PEOPLES WATER SERVICE CO.

Jan. 5, 1953

No. 38584          14 Adv. S. 36          61 So. 2d 785

170

*Donald Franks,* for appellant.

*Ely B. Mitchell* and *E. K. Windham,* for appellee.

**Kyle, J.**

L. M. Womack, plaintiff, filed suit against the Peoples Water Service Company, Incorporated, defendant, in the circuit court of Prentiss County, seeking to recover damages for the alleged wrongful shutting off of the water supply to the plaintiff's tenant houses in the town of Booneville. The defendant in its answer to the plaintiff's declaration alleged that the reason for the shutting off of the water supply was that the plaintiff had willfully refused to pay his water bill. At the conclusion of the testimony the court granted a peremptory instruction in favor of the defendant, and judgment was entered thereon. From that judgment the plaintiff prosecutes this appeal.

The testimony showed that the Peoples Water Service Company, Incorporated, furnished water to the citizens of the town of Booneville under a schedule of rates fixed by an ordinance of the mayor and board of aldermen adopted on April 5, 1927. The ordinance provided a schedule of rates as follows: For the first 5,000 gallons

of water furnished to each consumer, fifty cents per month per thousand gallons; for the second 5,000 gallons of water furnished to each consumer, forty cents per month per thousand gallons; and for all water furnished to each consumer over the first 10,000 gallons per month, thirty cents per thousand gallons. The ordinance further provided that the minimum charge to each consumer, irrespective of the amount of water actually consumed, should be as follows:

On each ⅝ inch meter.....................$ 1.50 per month
On each ¾ inch meter....................... 2.00 per month
On each 1 inch meter.......................... 3.00 per month
On each 1½ inch meter.................... 5.00 per month
On each 2 inch meter........................ 12.00 per month

The plaintiff, on August 26, 1947, applied to the company for water to supply tenants living in houses owned by the plaintiff on a block of land situated in the Negro section of the City of Booneville. The plaintiff deposited the sum of $5 as a cash deposit, and the defendant issued to him a consumer's deposit receipt for that amount. The plaintiff ran his own water pipe to the defendant's water main, and the defendant installed a meter near the southwest corner of the plaintiff's block of land for the purpose of registering the water piped on to the plaintiff's premises. According to the testimony of the defendant's witnesses there were three tenant houses on the block of land at the time the plaintiff applied for the water connection, only two of which were fit for living purposes. The plaintiff was told by the superintendent that there would be a minimum charge of $1.50 for these two houses. The plaintiff testified, however, that there were six or seven houses on his property at the time that he entered into the contract with the defendant for furnishing water.

The defendant continued to furnish water to the plaintiff at the minimum charge of $1.50 per month until January, 1950, when the defendant's superintendent and

office manager learned that several more tenant houses had been erected on the plaintiff's block of land, and the plaintiff was then notified that the water rate would be increased from $1.50 per month to $6.50 per month. At that time it appears that the plaintiff had eight 2-family tenant houses and six 1-family tenant houses which were being supplied with water. The plaintiff paid the increased rate for the month of January, but refused to pay the increased rate thereafter, and on April 15, 1950, the defendant shut off the water supply. At the time the water was cut off the plaintiff was delinquent in the payment of his water bill for the two preceding months.

The appellant's attorney in his brief argues only one point on this appeal, and that is that a public service corporation cannot cut off the supply of water or electricity to enforce payment of a disputed claim pending a settlement thereof, when the correctness of the amount claimed to be due is disputed in good faith and upon apparently reasonable grounds.

In passing upon this question it is necessary that we first examine the rule applicable in cases of this kind and then determine whether the facts presented in the record that we now have before us are sufficient to support the appellant's contention that the appellant's water supply was cut off wrongfully for the nonpayment of a disputed claim.

The general rule relating to the right of a public service corporation to discontinue service to a consumer for nonpayment of service charges is stated in 43 Am. Jur., p. 612, Public Utilities and Services, par. 64, as follows: "It is universally conceded by the courts, as a general rule, and subject to the limitations of the rule contained in the succeeding sections, that ▮▮▮ either a private concern or a municipality furnishing a utility service to the public, such as gas, electricity, or water, may prescribe and enforce a rule or regulation which pro-

vides for the shutting off of the service from a consumer who has defaulted in payment therefor. This right to cut off a consumer's service is frequently given by statute or charter, but the rule is the same even in the absence of legislative authority.''

In the case of Carmichael v. City of Greenville, 112 Miss. 426, 73 So. 278, this Court held that if a consumer is delinquent in the payment of his water rent, a municipality owning the water works system has a right to cut off his water supply until the rent in arrears is paid. And in the case of Central Louisiana Power Company v. Thomas, 145 Miss. 352, 110 So. 673, the Court held that an electric power company had the right to enforce payment of its current dues and tolls by cutting off the electric current of its delinquent patrons. ''To hold otherwise,'' the Court said, ''would have the effect of leaving such a public utility as appellant to continue forced service to its patrons, pending settlement of counterclaims for unliquidated damages, until such claims were settled by the courts. Such forced service might continue indefinitely, and, because thereof, the efficiency of the service to the public might be materially interfered with.'' In the case of Cospelich v. Mississippi Power Company, 164 Miss. 88, 144 So. 38, the Court held that an electric power company's rule requiring a deposit to be maintained by the customer to secure the payment of current bills for electric service was reasonable, and that the customer had no right to demand that the power company apply the deposit to the payment of his unpaid bills and at the same time demand a continuance of the service on the part of the power company.

It is recognized, however, that ''a public service company cannot arbitrarily enforce a rule or regulation as to the stoppage of service for the nonpayment of charges when there is a bona fide and just dispute as to the amount owed or as to the liability of the patron there-

fore." 43 Am. Jur., p. 613, Public Utilities and Services, par. 65.

In the case of Burke v. City of Water Valley, 87 Miss. 732, 40 So. 820, the Court held that a municipality which owned and operated a water works plant was not justified in withholding water from a tenant on the ground that there were unpaid charges against the premises due from a former tenant. And in the case of Mississippi Power Company v. Cochran, 167 Miss. 705, 147 So. 473, which is cited by the appellant's attorney in his brief in support of his argument on this appeal, the Court held that where a meter was furnished by an electric company and was under its exclusive control and the meter had failed to correctly measure the power consumed, and such failure was due to a defective transformer, the electric company could not discontinue service pending a settlement of a reasonable controversy regarding the accuracy of the meter and the amount of current consumed. The Court in its opinion in that case said: "We are clearly of the opinion that, under such circumstances, and particularly where the meter is not itself inaccurate, but its failure to correctly measure the power consumed is due to defective transformers, power lines, or plant machinery or equipment, the company cannot rightfully discontinue service pending the settlement of a reasonable controversy as to the accuracy of the meter and the amount of current consumed."

But the principle upon which the Cochran case was decided is not applicable to the facts in the case that we now have before us. There is indeed a conflict in the testimony as to the exact number of tenant houses the plaintiff had when he made the $5 deposit in August, 1947. But it was admitted that the plaintiff had erected additional tenant houses on the land after the water connection was made in 1947, and the plaintiff himself testified that he had eight 2-family tenant houses and

six 1-family tenant houses on the land in January, 1950, when the office manager increased the rate to $6.50 per month. The plaintiff admitted that he had fifteen families living on the premises at the time of the trial, and that there were eight or ten families using water from four hydrants. The plaintiff admitted that he had attempted to collect 25 cents per month from each of six tenants using the same water meter, or 20 cents per month from each of seven tenants using the same meter, for at least a part of the time. There is nothing in the record to justify the plaintiff's claim that the water company was under a duty to continue to furnish water for the greatly increased number of consumers who occupied those tenant houses for the lump sum of $1.50 per month.

The maximum rates which the water company was authorized to charge consumers had been fixed by the ordinance of the mayor and board of aldermen, and that ordinance expressly provided that a minimum charge of $1.50 per month might be made to each consumer irrespective of the amount of water actually consumed. The words "each consumer" meant each householder or family unit. Thompson v. City of Goldsboro, 151 N. C. 189, 65 S. E. 901; United States v. American Water Works Company (C. C.) 37 Fed. 747. The water company was under no contract obligation and owed no duty to the appellant to continue to furnish a water supply for the increased number of tenant houses and the increased number of consumers on the appellant's land for the lump sum of $1.50 per month. The increased rate which the water company demanded for furnishing a water supply for the tenant houses which were being supplied from the same meter in January, 1950, was far less than the minimum rates approved by the mayor and board of aldermen, which the water company was authorized to charge. The appellant had a right to discontinue the service which the water company was fur-

nishing if he desired to do so; but if he continued to accept the service, it was incumbent upon him to pay for the service at a rate that was satisfactory to the water company, not to exceed the rate prescribed by the municipal ordinance.

"Although an action for damages may lie for unjust discrimination in rates charged a consumer, it is generally held that the courts will not, at the instance of an individual consumer, interfere with the collection of rates fixed by legislative authority on the ground that such rates are excessive or unreasonable, if the rates charged are less than the maximum or within the limits prescribed by the public authorities." 43 Am. Jur., p. 698, Public Utilities and Services, par. 190.

In the case of Griffith, et al. v. Vicksburg Water Works Co., 88 Miss. 371, 40 So. 1011; 8 Ann. Cas. 1130, the Court held that where a water company accepts an ordinance by which the maximum rate for water furnished to a city and its inhabitants is fixed, the rates fixed by the company not in excess of the maximum are binding on consumers.

The appellant's attorney in his brief quotes a statement made by the trial judge in sustaining the appellee's motion for a directed verdict to the effect that, "I have no doubt in my mind that Mr. Lee Womack in this instance was actually acting in good faith." But, as stated by the Kentucky Court in the case of Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928, we are of the opinion that the appellant did not show a right to recover damages from the mere fact that the dispute, so far as he was concerned, was bona fide. "In a civil proceeding", the Kentucky Court said in that case, "the party in error is not saved the cost and consequence of his error by a show of good faith. It (the appellant) had no right to recover unless the water company was in the wrong; that is, had presented and demanded payment of an un-

just bill, and attempted to coerce payment of it by refusing water service.''

To entitle a plaintiff to recover damages in a case of this kind, it is necessary that the plaintiff show not merely good faith in his refusal to pay the service charges demanded, but also reasonable grounds for disputing the claim; and there is no proof in the record that we have here which shows any reasonable grounds for the appellant's contention that the service charges claimed to be due were in fact unreasonable, unjust or excessive.

For the reasons stated above, the judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.